**SOUTHWEST WATER SERVICES, INC., Appellant,**

v.

**Frank COPE et al., Appellees.**

**No. 17670.**

Court of Civil Appeals of Texas, Fort Worth.

Dec. 5, 1975.

Rehearing Denied Jan. 9, 1976.

Dixon & Petrovich, and George J. Petrovich, Jr., Fort Worth, for appellant.

Glasgow & Jones, and Donald R. Jones, Stephenville, for appellees.

## OPINION

MASSEY, Chief Justice.

This is an appeal by defendant Southwest Water Services, Inc., hereinafter termed Southwest, from order of the trial court granting permanent injunction to plaintiffs. Plaintiffs' suit was a T.R.C.P. 14 class action for relief. Named plaintiffs in the class action were Frank Cope and others.

Judgment order affirmed.

Each of the plaintiffs who were members of the class had purchased property in what is known as Oak Trail Shores, a land subdivision in Hood County, Texas. The subdivision was land carved into approximately 3800 lots. It had been established in 1969. Western Resort Properties, Inc. was the owner and developer. The promoters of Western Resort Properties were not only its officers and stockholders but also those of two other corporations separately organized to function in respect to laying out and platting the subdivision, running water lines, and operating the water works supply to the lots within the subdivision as it was being developed. Of these the operator of the water works was the defendant, Southwest.

Pursuant to promotion of the subdivision there was thereat a crew of salesmen, with a sales manager, all trained in their primary jobs of lot sales. Part and parcel thereof were representations authorized relative to water supply to be afforded any lot purchaser. The location was some six miles south of Granbury, Texas, the nearest town. Of interest is the fact that the sewage disposal for each lot (or land parcel) was to be effected by use of septic tanks; making obvious the importance that there be a means of water supply to any prospective lot purchaser through water lines rather than individual wells. The sales force was authorized and directed not only by Western Resort Properties but by Southwest to sell lots by representing, among other inducements, that a purchaser would be entitled to receive water from Southwest at a specified rate, to-wit: that until water meters were installed there would be a "flat rate" charged regardless of the amount of water used, with a "metered rate" to apply once water meters were installed at a rate of cost which would not be in excess of the rate paid by the residents of the City of Granbury who were customers of its municipal water works, and such rate would be that charged so long as the purchaser owned his lot.

On this, since it developed that the City of Granbury charged a different rate to customers living outside its city limits from the rate charged to customers living within its limits, there was testimony that what was represented and intended to be represented was that the rate charged residents of Oak Trail Shores would be that charged the residents living inside the city limits of the City of Granbury, Texas. This testimony came from the man who had formerly been the sales manager at the Oak Trail Shores subdivision, though engaged in other employment at time of the trial.

From the evidence it would appear that as applied to Western Resort Properties and Southwest each might properly be said to

have constituted the *alter ego* of the other as applied to the transaction of initial sale of the lots of Oak Trail Shores. In any event the evidence established that there was pre-existent agency authorization for Southwest by the sales organization at the subdivision, and also ratification on the part of Southwest after sales, of the promissory representation above stated in inducement of lot purchases, viz: by representing that Southwest would supply water to lot purchasers at the rates charged by the City of Granbury for as long as they continued to own their lots.

Indeed, after the lots were purchased Southwest presented a written form of contract which was substantially in accord with the representations made; or at least not in contradiction.

The written contract prepared by Southwest and used initially upon each lot owner becoming applicant for water service, included among its provisions, the following: "Applicant agrees and acknowledges that such rates are for residential use only and that Supplier has the right at any time to install a meter and charge for water used at the same rate as charged for residential water service by the City of Granbury, Texas." Nothing in this contract related to time and duration. It was only in parol evidence that time and duration of entitlement was shown. Such evidence was that as part of inducement for each lot purchase there was representation that the rate would persist so long as the purchaser owned his lot. There was no like agreement when a lot owner appeared before Southwest and contracted for water.

Beginning about September 13, 1971, Southwest began to install meters. As they were installed it began to charge its customers the "metered rate" which was the same charge being made to those residents living inside the City of Granbury by their municipal water works. December 30, 1971, Southwest sent notices to its Oak Trail Shores customers advising of a certain increase of rates to be charged for "metered service". These rates were above those charged in Granbury. This did not occasion action by its customers. There was some sort of difficulty with a federal agency encountered at this time by Southwest. Pending resolution of the difficulty Southwest notified its customers that charge for water would revert to the old "flat rate". The difficulty was resolved. In June, 1972, without notice, Southwest began to charge at a "metered rate" slightly in excess of that which was then being charged in the City of Granbury to residents within its city limits. This did not occasion action by the Oak Trail Shores customers of Southwest.

In December of 1973, however, action taken by Southwest did occasion counteraction. In January, 1974, with some qualification of its December 30, 1971, program for charges upon "metered rates" for water supplied residents of Oak Trail Shores, Southwest finally settled upon the position it would take. It prepared and forwarded notices to its customers in Oak Trail Shores that effective beginning January 15, 1974, the monthly rates to be charged would be a $7.50 minimum for the first 5,000 gallons (or any lesser amount), plus 90¢ per thousand for the next 10,000 gallons, plus 80¢ per thousand for water used in excess of 15,000 gallons. The rates then being charged residents within the City of Granbury was less than two-thirds the intended rate to be charged plaintiffs living in Oak Trail Shores. February 2, 1974, twenty-eight named plaintiffs filed a class action suit against Southwest in behalf of themselves and all other property owners in the subdivision who had contracted with the defendant upon the initial form of contract.

We need not be concerned with action prior to trial of the case on the merits, as for permanent injunction. Following such trial before the court, without a jury, judgment was rendered as follows: "IT IS THEREFORE ORDERED . . . that . . . Southwest Water Services, Inc., its employees, servants and agents be, and they are hereby enjoined and restrained from: (1) charging water rates to said Plaintiffs in excess of the rates presently

charged or hereafter established by the City of Granbury, Texas, for residential water use within the city limits of said City; and (2) from terminating the water service to Plaintiffs because of the refusal of Plaintiffs to execute other or additional contracts for water service which would terminate or supersede the Contracts under which Plaintiffs are now receiving water services.

"IT IS FURTHER ORDERED that said injunction shall be in full force and effect as to each of the Plaintiffs herein (a) for a period of ten (10) years from the date of execution of the hereinabove described contract by each of the respective Plaintiffs hereto; OR (b) until the property owned by each of said Plaintiffs in the Oak Trail Shores Subdivision in Hood County, Texas, is sold to a third party, whichever event shall first occur."

The court filed Findings of Fact, among which was the finding that: "I further find that Defendant, by and through its agents and sales representatives expressly represented to the various Plaintiffs when they purchased their lots in the Oak Trails Subdivision that the metered rates which would be charged under the terms of the contract for water services would be the same as those charged by the City of Granbury to its residents within said city." This fact finding was amply supported by evidence in the record. Indeed it is not attacked. From the record it is clear that the time of the representation was at the stage where it was made as an inducement of each lot purchase.

■ Such fact finding, under the circumstances of this case, adequately supports the grant of affirmative injunctive relief under the doctrine of promissory estoppel. This premise for relief was not presented by plaintiffs' pleadings. However, the issue was raised by the evidence in the case and it was tried by express or implied consent of the parties. Therefor, it is to be treated as if raised by the pleadings whether that be true or not. T.R.C.P. 67,

"Amendments to Conform to Issues Tried Without Objection".

Language in what has been written upon the doctrine of promissory estoppel might mislead and cause one to believe that its use must be purely defensive. Here we have stated that the plaintiffs are benefitted and are entitled to prevail thereby under the fact finding of the trial court. It is now settled that there may be appropriate use of the doctrine by a plaintiff as a ground of entitlement to relief. *Wheeler v. White,* 398 S.W.2d 93 (Tex.Sup., 1965). That it might be so used was later affirmed in the celebrated case of *"Moore" Burger, Inc. v. Phillips Petroleum Company,* 492 S.W.2d 934 (Tex.Sup., 1972). In that case the plaintiff was held as proper to be treated as able to make out a case thereunder, and so to make improper the summary judgment which had been rendered against him. In *"Moore" Burger* the court quoted from the Restatement of the Law, Contracts, Sec. 90, "Promise Reasonably Inducing Definite and Substantial Action", the following: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

In the instant case all the elements are present, and in particular it is evident that injustice can be avoided only by enforcement of the promise. See also Restatement of the Law, Contracts, Sec. 240, "In What Cases Integration Does Not Affect Prior or Contemporaneous Agreements". Each plaintiff represented by the class action entered into possession of real estate for a residential purpose. Each will be utterly at the mercy of Southwest with respect to what he might be obliged to pay for water service unless injunction be granted.

■ Under the above stated theory for affirmance Southwest's Points of Error Nos. 3 and 4 become immaterial. They are overruled for that reason. Southwest has raised by these points the contention that

the contract whereby it was to furnish water (executed subsequent to lot purchase) was indefinite and uncertain and not to be enforced by writ of injunction in that it failed to specify duration of its obligation to furnish water at any certain rate for any certain time; and that it lacked mutuality on the part of the parties. The necessity of consideration is further obviated when it is recognized that the Statute of Frauds is without application under the circumstances of the case and our decision that the doctrine of promissory estoppel applies and that it is to the lot-purchase transactions themselves that we should look for finding support of the judgment. See Restatement of the Law, Contracts, Sec. 12, "Unilateral and Bilateral Contracts", and Sec. 198, "When Contracts Not Performable Within a Year are Within Class V of § 178". (Section 178 is "Classes of Contracts Within the Statute of Frauds").

■ Point of Error No. 8 complains that the trial court erred in not finding and declaring that the contract in question (and Southwest means the written contract entered into after the purchase of each lot) could be terminated in the event of non-payment of a water bill or for a user's wilful or negligent pollution of the water supply. This was no part of the controversy on trial and as such was not proper to be litigated or mentioned in the judgment. As a cause of action it is one which has not arisen.

■ Points of Error Nos. 6 and 7 complain of the 10 year period by the injunction set for plaintiffs who retain their lots and do not sell, of the lesser period in the event of sale to any third-parties by those who might dispose of their lots, and because the limitation of metered charge was that rate charged the residents of Granbury, Texas, who lived inside rather than outside the Granbury city limits. The answer to these complaints is that the relief granted was supported by the evidence and requested by the prayer for relief. Furthermore, it could only be those of the plaintiffs who might retain their lots for longer than 10 years who could be prejudiced by the judgment of the court relative to duration of the permanent injunction, and they have made no complaint upon the appeal.

For convenience in preparation of this opinion we have not earlier written upon the remaining points of error, Points Nos. 1 and 2. These attack propriety of the plaintiffs' suit as a class action, and claim error in that the trial court did not properly or adequately define the persons in the class.

■ The applicable Rule is T.R.C.P. 42, "Class Actions". One portion provides authorization for bringing a class action where the right sought to be enforced is several, as applied to those who might be individual plaintiffs, and there is a common question of law or fact affecting the several rights and a common relief is sought, and where the number of these individuals are so numerous as to make it impracticable to bring them all before the court. In such an instance such of them, one or more, as will fairly insure the adequate representation of all may bring and prosecute the suit on behalf of all. On this see 1 McDonald, Texas Civil Practice, (1965 Revised Volume), p. 338, "Parties", Sec. 3.34.1, "Class Action. A. Types", and p. 351, Sec. 3.42.2 "—B. Adequacy of Representation".

■ On the foregoing we may observe that it is no part of the duty of the court to define the persons in the class elsewhere than in the judgment in the event relief is granted, and as we construe the complaint such is not attacked by the points of error. In any event the order of permanent injunction does adequately and properly define the members within the class who are afforded relief thereby. The court, in determining propriety of the suit as a class action, passes upon the sufficiency of the pleadings to define the plaintiffs. The court does no more than this. The express or implied ruling in permitting prosecution of the suit as a class action is appropriate to

be challenged on appeal. Such a case was *Matthews v. Landowners Oil Ass'n,* 204 S.W.2d 647 (Amarillo Civ.App., 1947, writ ref., n. r. e.), where there was an appeal from a plea in abatement to and dismissal of a case as an improperly attempted class action suit. Thereon Southwest places strong reliance.

In our opinion the language of the case in the *Landowners Oil* case supports rather than condemns the action of the court allowing prosecution of the instant case as a class action. Evidence introduced on trial and made a part of the record on appeal established that there were at least one hundred and eighty-four (184) persons with the same right, born in the same kind of transaction as the named individuals bringing the suit. All had executed the identical contract with Southwest following consummation of purchase of lots within the Oak Trail Shores subdivision. These were members of the class represented as plaintiffs by the class action brought. In these circumstances a class action suit was proper.

Cases holding to the same effect in similar situations are: *Group Hospital Service, Inc. v. Barrett,* 426 S.W.2d 310 (Houston Civ.App., 14th Dist., 1968, writ ref., n. r. e.), and *Texarkana Independent School District v. Lewis,* 470 S.W.2d 727 (Texarkana Civ. App., 1971, no writ hist.). All points of error of Southwest are overruled.

Judgment is affirmed.