TPS FREIGHT DISTRIBUTORS, INC.
and B. Bowlus West, Appellants,

v.

TEXAS COMMERCE BANK–DALLAS
and Wanda J. Blair, Co–Independent
Executors of the Estate of Kenneth G.
Blair, Appellees.

No. 2–89–053–CV.

Court of Appeals of Texas,
Fort Worth.

April 18, 1990.

Rehearing Overruled May 22, 1990.

Akin, Gump, Strauss, Hauer & Feld and
Carol Stephenson and Thomas J. Owens,
Dallas, for appellants.

Baker & Botts and Peter A. Moir, Dallas,
for appellees.

Before WEAVER, C.J., and JOE
SPURLOCK, II and MEYERS, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This is an appeal from a contract cause
of action based on a covenant not to com-
pete. In this case of first impression in
Texas, the issue is whether a covenant not
to compete terminates upon the death of
the covenantor. The trial court found the
covenant did not terminate and granted
summary judgment for the appellees. Ap-
pellants bring forth six points of error.

We affirm.

On December 16, 1985, TPS ("appellants") purchased the assets of a company called TPS Distributors/Consolidators, Inc. ("Distributors"). The sellers of Distributors had earlier purchased this company from Kenneth Blair, pursuant to which the sellers and Blair executed a contract of sale and a covenant preventing Blair from competing with Distributors. When the sellers failed to fulfill their obligations to Blair under the contract of sale, Blair began running Distributors as, according to Blair, an informal "debtor in possession." After Blair succeeded in returning Distributors to profitability, he proceeded to look for new buyers on behalf of the sellers. At this time, appellants purchased the assets of Distributors from the sellers.

In exchange for purchasing the assets of Distributors, B. Bowlus West, on behalf of TPS, agreed to assume most of the original purchaser's obligations to Blair. On behalf of TPS, West executed a promissory note to Blair, assumed a promissory note payable to Blair, and agreed to pay Blair the sum of $112,000 under a new covenant not to compete. The total amount (assumption note, second note, and covenant sum) was secured by a single letter of credit, but the assumed note and the second note were paid off prior to trial.

The new covenant not to compete was executed by both parties on December 16, 1985, and provided that Blair could not compete with TPS from December 16, 1985 through December 31, 1990. In consideration, TPS agreed to pay Blair twenty-three monthly payments of $1,266.67 beginning February 1, 1986, and then thirty-seven monthly payments of $2,266.67, with the last payment being due January 1, 1991, the day after full performance by Blair. Under the agreement, Blair agreed not to compete with TPS, but did not make any affirmative promises or agree to perform any services or provide any advice to TPS. Paragraph seven of the agreement also provides that it "shall ... inure to the benefit of the respective heirs, successors, assigns and legal representatives of the parties...."

TPS made payments to Blair each month through and including September, 1987. Blair died on September 10, 1987, after which TPS ceased making voluntary payments on the ground that TPS considered the covenant to have terminated upon Blair's death.

The independent executors of Blair's estate brought an action against TPS and West to recover the balance due under the covenant in the County Court where Blair's will was in probate. That action was transferred to the District Court and TPS and West counter-claimed for declaratory judgment. Both parties moved for summary judgment, and the trial court granted appellees' Motion for Summary Judgment after finding that the covenant was not a personal services contract. The trial court also accelerated the balance due under the covenant.

## PERSONAL SERVICES CONTRACT—TERMINATION AS A MATTER OF LAW

■ Appellants' first point of error asserts that the trial court erred in granting appellees' Cross–Motion for Summary Judgment and in denying appellants' Motion for Summary Judgment because the covenant was of a personal nature and thus terminated upon the death of the covenantor as a matter of law.

In support of this point, appellants urge that a covenant not to compete is a personal services contract because a contract is personal in its character if one party relies upon the skill, character, or credit of the other party. See *Peniche v. Aero–Mexico*, 580 S.W.2d 152, 156–57 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); *Lancaster v. Greer*, 572 S.W.2d 787, 790 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Appellants then note that a personal services contract terminates upon the death of the party whose personal performance or character formed the basis of the contract. See *Nutt v. Members Mutual Ins. Co.*, 474 S.W.2d 575, 576 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.); *Moran v. Wotola Royalty Corp.*, 123 S.W.2d 692, 694 (Tex. Civ.App.—Fort Worth 1938, writ ref'd).

Following this reasoning, appellants urge that a covenant not to compete will also terminate upon the death of the covenantor. Appellants admit that there are no Texas cases supporting their theory that a covenant not to compete is a personal services contract.

Appellees argue that a covenant not to compete is *not* a personal services contract. Blair had no obligation to provide any services or advice to appellants, and there was no promise made by Blair remaining unperformed after his death. As appellants' obligation was not conditioned on Blair's survival and was not terminated by his death, appellees say that appellants are ignoring the distinctions "between covenants for personal services ... and covenants not to compete" recognized by Texas courts. *See T.E. Moor & Co. v. Hardcastle*, 421 S.W.2d 126, 130 (Tex.Civ.App.—Beaumont 1967, writ ref'd n.r.e.).

Appellees further argue that there are no services or advice that appellants will be denied by reason of Blair's death, nor have Blair's heirs and successors, the beneficiaries of the covenant, competed with appellants. Therefore, Blair's premature death does not deprive appellants of any of the benefits for which they agreed to pay the money. Appellees' argument is persuasive.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); TEX.R. CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *See id.*

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Ins. Co.*, 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the non-movant and any doubts resolved in his favor. *Montgomery*, 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American*, 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of his cause of action or defense as a matter of law. *City of Houston*, 589 S.W.2d at 678.

After reviewing the evidence in the light most favorable to appellants (as non-movants), we hold that there exists no genuine issue of material fact to be decided. The "facts" about what the covenant contains are not disputed. The only argument is about the legal effect of such facts. Blair's only obligation was to refrain from doing; he had no affirmative burden to perform. Upon his death, his heirs were likewise bound to honor the non-compete provision. We agree with appellees' reasoning that the covenant was not of a personal nature and therefore we hold it did not terminate upon Blair's death. As a result, the trial court did not commit error in granting appellees' Motion for Summary Judgment and in denying appellants' Motion for Summary Judgment.

Appellants' first point of error is overruled.

### PERSONAL SERVICES CONTRACT— IMPLIED CONDITION OF SURVIVAL

■ Appellants' second point of error urges that the trial court erred in granting appellees' Cross–Motion for Summary Judgment because appellants' continuing obligation to make payments to the covenantor was conditional upon the covenantor's survival throughout the term of the covenant. In accordance with this point of error, appellants argue that the covenant, as a personal services contract, contained a

condition implied by law that Blair would survive during its term. *See Nutt v. Members Mutual Ins. Co.,* 474 S.W.2d at 576–77. In Texas, unless the express terms of the contract state otherwise, or unless the contract's terms show a contrary intent by necessary implication, the continued life of the covenantor in a *personal services contract* is a constructive condition to further obligation of either party to such contract. *Id.* Appellants reason that because the covenant was a *personal services contract,* Blair's death during the term of the covenant violated this implied condition and excused appellants' further performance.

The contract involved in *Nutt v. Members Mutual Ins. Co.* was an *employment contract* which was a personal services contract that the court held terminated at the employee's death. *Id.* at 576. Appellants have cited other cases supporting the proposition that survival is an implied condition in a *personal services contract,* but there are no Texas cases cited holding that survival is implied in a covenant not to compete.

As previously noted, Blair did not contract to provide any services or do anything for appellants, instead, he agreed to *refrain* from doing something. Further, Blair's heirs are bound to the covenant by its terms, in that in order to receive the benefits of the covenant, they too must refrain from competing with appellants. Appellants are still getting the bargain for which they contracted. If appellants had wished to reserve the right to pay less than the full sum, in the event of Blair's death, they could have inserted such a condition into the contract. They did not. Having already held that this covenant not to compete is not a personal services contract, we also hold that there was no implied condition in the contract that Blair should survive throughout the term of the contract. Contracts often survive the death of one of the parties involved. When the trial court granted appellees' Motion for Summary Judgment it did not commit error in failing to conclude the contract terminated on Blair's death because of an implied condition therein.

Appellants' second point of error is overruled.

### DEATH—A FAILURE OF CONSIDERATION

Appellants' third point of error urges that the trial court erred in granting appellees' Cross–Motion for Summary Judgment because the covenant terminated as a matter of law upon the death of the covenantor for failure of consideration. Appellants urge that the consideration provided by Blair to support the covenant was his promise not to compete with TPS. However, following his death Blair no longer had the capability to compete with TPS, and thus, could no longer forbear his legal right to do so. Appellants argue that because Blair was not forbearing to exercise a legal right, he was no longer providing consideration for the covenant.

Appellees note that the failure of consideration defense was not presented to the trial court in the summary judgment proceedings, and was thus waived. *See Stacy v. Energy Management Group Ltd., Inc.,* 734 S.W.2d 149, 150 (Tex.App.—Houston [1st Dist.] 1987, no writ). Although appellants included failure of consideration as an affirmative defense in their answer, merely raising such an affirmative defense in an answer to a petition does not preserve that defense on appeal from a summary judgment in favor of the plaintiff. Pleadings, even if sworn to, do not constitute summary judgment proof. *Americana Motel, Inc. v. Johnson,* 610 S.W.2d 143 (Tex.1980) (per curiam).

To properly preserve the defense for purposes of appeal, appellants had to expressly present the defense to the trial court in the summary judgment proceeding. *Clear Creek Basin,* 589 S.W.2d at 677–79. Instead, appellants abandoned the failure of consideration defense during the summary judgment proceeding by failing to include it either in their Motion for Summary Judgment or in their response to appellees' Cross–Motion for Summary Judgment. *See Blieden v. Greenspan,* 742 S.W.2d 93, 98 (Tex.App.–Beaumont 1987), *rev'd on other grounds,* 751 S.W.2d 858 (Tex.1988).

Appellants' third point of error is overruled.

## DEATH—A LACK OF MUTUALITY OF OBLIGATION

In their fourth point of error, appellants argue that the trial court erred in granting appellees' Cross–Motion for Summary Judgment because the covenant terminated as a matter of law upon the death of the covenantor for lack of mutuality of obligation. Appellants urge that a bilateral contract (such as the covenant not to compete) must be supported by mutual obligations of the parties thereto. In this case, Blair's sole obligation under the covenant ceased upon his death; thus, the covenant was no longer valid and enforceable against TPS.

We note that the mutuality of obligation requirement in a contract is satisfied at the time of its formation, provided that the contract is based on valid consideration. *See Texas Gas Utilities Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex.1970). The parties in this case were mutually obligated at the time they executed the contract, because Blair promised not to compete and appellants promised to pay Blair a sum of money. These mutual promises provided the consideration necessary to fulfill the mutuality of obligation requirement, and a valid contract was formed between appellants and Blair. *Id.* Where there is any other consideration for a contract, mutuality of obligation is not essential. *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 344 (Tex.1955). We hold that the covenant did not terminate as a matter of law upon the death of Blair for lack of mutuality of obligation, because the covenant was formed with other valid consideration, and mutuality of obligation was therefore unnecessary.

Appellants' fourth point of error is overruled.

## INADMISSIBLE SUMMARY JUDGMENT EVIDENCE

Appellants' fifth point of error argues that the trial court erred in granting appellees' Cross–Motion for Summary Judgment because it was based on inadmissible evidence to which appellants objected. Appellants urge that the affidavit of Wanda J. Blair, offered in support of appellees' Motion for Summary Judgment, was inadmissible hearsay since it was not based upon personal knowledge, despite its recitation to the contrary. The only source of Mrs. Blair's "knowledge" of the facts stated therein would be hearsay statements from Mr. Blair. These objections were presented in appellants' Response to Plaintiff's Cross–Motion for Summary Judgment, but were never ruled upon by the court.

The evidence offered in support of a Motion for Summary Judgment must be admissible. TEX.R.CIV.P. 166a(e); *Liberty Mutual Ins. Co. v. Woody*, 640 S.W.2d 718, 720 (Tex.App.—Houston [1st Dist.] 1982, no writ). Furthermore, a trial court sitting without a jury or during pretrial hearings is presumed to rely only on admissible evidence. *See Naficy v. Braker*, 642 S.W.2d 282, 285 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Landscape Design v. Harold Thomas Excavating, Inc.*, 604 S.W.2d 374, 378 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). There is nothing in the trial court's order or in the final order of Summary Judgment that indicates the trial court relied on inadmissible evidence. If there is other competent evidence to support the judgment, we may affirm it. *See Fletcher v. Travis County Child Welfare Dept.*, 539 S.W.2d 184, 186 (Tex.Civ.App.—Austin 1976, no writ). We find the plain terms of the contract are sufficient to support the judgment. Appellants have not overcome the presumption that the trial court only looked at admissible evidence when granting the Motion for Summary Judgment.

Appellants' fifth point of error is overruled.

## ACCELERATION OF PAYMENTS

Appellants sixth point of error contends that even if the trial court were correct in granting appellees' Motion for Summary Judgment, then the trial court erred in accelerating payments allegedly due under

the covenant. Appellants urge that acceleration would not be permissible because all payments due under the covenant were unconditionally tendered on time by appellants into the registry of the court; and such unconditional tender is the legal equivalence to an unconditional tender to appellees.

■ Appellees respond, and we agree, that a payment into the registry of the court under a reservation of rights or a conditional tender does not constitute "payment" so as to preclude acceleration. *See C.F. Bean, Corp. v. Rodriguez,* 583 S.W.2d 900, 901 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Arguelles v. Kaplan,* 736 S.W.2d 782, 784 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Evidence that appellants' tender was conditional is shown by the Agreed Order to Deposit Funds Into the Registry of the Court entered by the court. This order provides that the funds were deposited into the registry of the court "pending resolution of this case." The order further states that "the deposit of funds into the registry of the Court by [appellants] is not payment as required by the terms of the Covenant Not to Compete...." Moreover, the covenant itself includes an acceleration clause which states that in the event of appellants' default, the balance of all payments to be paid under this agreement shall be forthwith due and payable in their entirety. We believe that such evidence is proof that appellants' tender was conditional.

We hold that appellants' deposit to the registry of the court was not unconditional because they reserved their right to the deposit by pursuing their rights in litigation, and because appellees could recover the deposit only if they prevailed in this lawsuit. As appellants' deposit of each installment into the registry of the court was conditional on appellees obtaining a judgment against appellants, we hold that the trial court did not err in accelerating the payments.

Appellants' sixth point of error is overruled.

The judgment of the trial court is affirmed.