Sam F. HENDERSON, LTM Enterprises, Inc. and Waterland Enterprises, Inc., Appellants,

v.

TEXAS COMMERCE BANK–MIDLAND, N.A., f/k/a United Bank Midland, N.A., Appellee.

No. 08–91–00232–CV.

Court of Appeals of Texas, El Paso.

Aug. 19, 1992.

Rehearing Overruled Sept. 16, 1992.

John E. Gunter, Midland, for appellants.

Jess Hall, Jr., Lidell, Sapp, Zivley Hill &
LaBoon, Houston, Barry N. Beck, Julia E.
Vaughan, Cotton, Bledsoe, Tighe & Daw-
son, Midland, for appellee.

Before OSBORN, C.J., and KOEHLER
and BARAJAS, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a judgment notwithstanding the verdict entered in favor of Appellee, Texas Commerce Bank, formerly known as United Bank Midland, and against Appellants, Sam F. Henderson and LTM Enterprises, Inc. The jury returned a verdict in favor of Appellants, and awarded the sum of $1,179,000 as damages. We affirm.

## I. SUMMARY OF THE EVIDENCE

In January 1987, Sam F. Henderson began negotiating with Appellee, United Bank, Midland, N.A., now Texas Commerce Bank–Midland, N.A. (TCB), in an effort to obtain a loan with which to refinance certain personal and business obligations that were then owing to InterFirst Bank, Odessa, N.A. Henderson's loan requests contemplated only the refinancing of his existing debt at InterFirst, without seeking to borrow any additional funds. The InterFirst debts were the individual indebtedness of Henderson, as well as the business indebtedness of Henderson LTM Enterprises, Inc. and Waterland Enterprises, Inc., both of which were owned by Henderson.

The parties discussed three loans to Henderson and his two companies, but determined that Henderson would have to liquidate some of his assets to bring down his existing debt. On February 20, 1987, Henderson began to liquidate his assets. In early March 1987, still prior to the loan requests being submitted to TCB's loan committee, Henderson was served with demand for payment on his notes at InterFirst, all of which were in default. On March 12, 1987, the loan requests were submitted to the TCB's directors. On that date, TCB's officers recommended approval of the loans, conditioned upon the following: (1) completion of a plan by Henderson, to be approved by InterFirst, to demonstrate that he could service the debt; (2) verification of Henderson's claimed asset values; and (3) confirmation of the status of Henderson's indebtedness at InterFirst. On March 23, 1987, one of TCB's officers confirmed the above through a letter to InterFirst, stating that its loan committee had conditionally approved the three loans in an aggregate amount of $2,450,000. In connection with the above requirements, TCB gave Henderson a detailed documentation checklist related to the loan transaction to expedite the loan process.

Henderson was experiencing financial troubles throughout the period of time that he was negotiating with TCB. TCB first became aware of Henderson's financial troubles in April 1987, and informed Henderson several times that it would not be able to proceed further with his loan requests until he cleared up a number of his financial problems. In May 1987, TCB was made aware of the InterFirst defaults, when InterFirst informed TCB that it was beginning foreclosure proceedings on property which was scheduled to be used as security on the loans. Henderson argues that he complied with every condition set by TCB, and as a result, suffered serious financial losses for having relied on TCB's promise to loan him money. He sought damages under contract, promissory estoppel and DTPA theories of recovery.

## II. DISCUSSION

In his first point of error, Henderson asserts that the trial court erred in entering a judgment notwithstanding the verdict insofar as the evidence supported each and every jury finding.

In order for a trial court to correctly disregard a jury's findings and enter a judgment notwithstanding the verdict, it must determine that there is no evidence upon which the jury could have made the findings relied upon. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex.1987). On review, the record is examined in the light most favorable to the jury finding, considering only the evidence and inferences which support them and rejecting the evidence and inferences contrary to the findings. *Sherman v. First National Bank*, 760 S.W.2d 240, 242 (Tex.1988); *Navarette v. Temple Independent School District*, 706 S.W.2d 308, 309 (Tex.1986). If there is more than a scintilla of competent evidence

to support the jury's finding, the judgment notwithstanding the verdict should be reversed. *Id.*

### A. *Breach of Contract*

█ TCB conditionally promised to lend Henderson the sum sought, contingent upon his meeting certain delineated conditions. A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). To make performance conditional, terms such as "if," "provided that," "on condition that," or some similar phrase of conditional language must normally be included, although there is no requirement to utilize such language. *Criswell v. European Crossroads Shopping Center, Ltd.*, 792 S.W.2d 945, 948 (Tex.1990). In order to determine whether a condition precedent exists, the intention of the parties must be ascertained by looking at the entire contract. *Id.* In construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible. *Id.; Schwarz–Jordan, Inc. v. Delisle Const. Co.*, 569 S.W.2d 878 (Tex.1978). Conditions are not favored by Texas courts. *Hohenberg Bros. Co.*, 537 S.W.2d at 3; *Sirtex Oil Industries, Inc. v. Erigan*, 403 S.W.2d 784, 787 (Tex.1966).

█ In this case, the minutes of the March 12, 1987, meeting of TCB's Board of Directors state:

> The above loans are approved *subject to* Mr. Henderson completing and our approving his proposed plan to improve cash flow through the sale of assets so that he can service these loans and verification of collateral values, and status of debt with Interfirst [sic] Bank Odessa. [Emphasis added].

Similarly, the letter of March 23, 1987, from United (TCB) to InterFirst, states:

> These loans have been approved *subject to* certain collateral and loan requirements as outlined in a loan agreement which is being prepared by legal counsel. [Emphasis added].

It is clear from the words "subject to" that any agreement between the parties was based on satisfaction of the conditions precedent. In addition, Henderson testified that he understood the conditions of the loans and did not meet some of the conditions until late May or early June 1987. Specifically, Henderson also admitted and TCB confirmed that he did not ever complete the collateralization requirements. In addition, Henderson did not reveal the fact that the loans at InterFirst were in default when he made the application at TCB. Further, Henderson failed to disclose the fact that Water Wonderland, which was to be used as security for the loans, was burdened with a significant tax lien and personal injury liabilities. Also, Henderson's financial statement overstated the value of his collateral. Finally, Henderson did not tell TCB that he was borrowing large sums of money from several other banks during his negotiations with TCB. In light of the above, it is clear that the conditions precedent were not met. Therefore, TCB's duty of immediate performance of any promise or agreement never arose. *Block 316 Garage, Ltd. & Wortham v. Van Liew*, 705 S.W.2d 249, 251 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Under contract construction and interpretation, where the contract imposes no definite obligation on one party to perform, or other consideration, it lacks mutuality. *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340 (1955); *TPS Freight Distributors, Inc. v. Texas Commerce Bank*, 788 S.W.2d 456, 466 (Tex. App.—Fort Worth 1990, writ denied). A contract that lacks mutuality of obligation is unenforceable. *Id.* Hence, the contract in the instant case is unenforceable.

### B. *Promissory Estoppel*

█ Henderson's fourth amended original petition alleges promissory estoppel. Additionally, the first three questions in the jury charge refer specifically to the elements of promissory estoppel. Promissory estoppel is an available cause of action to a promisee who has acted, to his detriment, in reasonable reliance on an other-

wise unenforceable promise. *Wheeler v. White*, 398 S.W.2d 93, 96–97 (Tex.1966). The elements of promissory estoppel include: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) detrimental reliance by the promisee. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

■ For the reasons discussed above, it is clear that the alleged contractual provisions relied upon are conditions rather than promises. *See Hohenberg Bros. Co.*, 537 S.W.2d at 3. Additionally, we find no evidence that TCB contemplated or should have contemplated that Henderson would rely on the preliminary negotiations, without his meeting all of the conditions of the loans. Finally, there is no evidence that Henderson relied on the preliminary negotiations and letters. Consequently, Henderson failed to meet the elements necessary to invoke the doctrine of promissory estoppel, and the jury's responses in that regard were not supported by the evidence.

## C. *Deceptive Trade Practices Act*

■ The trial court also submitted jury questions as to alleged unconscionable actions under the Texas Deceptive Trade Practices Act (DTPA). However, the trial court stated in its memorandum opinion that it erred in submitting the deceptive trade practices claim to the jury, since Henderson did not qualify as a "consumer" under the DTPA. Tex.Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987). A trial court may submit issues to the jury, subject to reserving rulings on questions of law until after verdict, when the same questions may be presented for consideration of a JNOV. *Bishop v. Allied Finance Company*, 483 S.W.2d 46, 49 (Tex. App.—Dallas 1972, no writ). The final ruling of the trial court is determinative. *First Federal Savings & Loan Association v. Ritenour*, 704 S.W.2d 895, 898 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.).

■ A plaintiff must qualify as a "consumer" in order to prevail under the DTPA. *First Federal Savings & Loan Association*, 704 S.W.2d at 895, 898.

Whether a plaintiff is a "consumer" under the DTPA is a question of law to be determined from the evidence by the trial court. In that regard, in order to establish consumer status under the DTPA, a plaintiff must show that (1) he sought or acquired goods or services by purchase or lease and (2) the goods or services purchased or leased form the basis of the complaint. Tex.Bus. & Com.Code Ann. § 17.45(4); *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex.1987).

An individual who merely seeks to acquire the use of money over a period of time, to refinance loans, does not seek or acquire a service, as defined by the DTPA, and therefore, is not a consumer protected under the DTPA. *Riverside National Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex. 1980); *Pace Corp.*, 155 Tex. 179, 284 S.W.2d at 340; *TPS Freight Distributors, Inc.*, 788 S.W.2d at 456. Similarly, money is not a "good" under the DTPA. *First Federal Savings & Loan Association*, 704 S.W.2d at 898. In the instant case, although Henderson argues that he sought a complete banking connection, there is no evidence that Henderson sought to do anything other than borrow money from TCB to refinance his debts at InterFirst. The sole basis of Henderson's complaint about his transactions with TCB is that the bank failed to make the loans. No complaint pertains to any collateral activities that he now claims to constitute a service. As a result, based on the mere lending of money, Henderson does not have an actionable cause under the DTPA. See *Riverside National Bank*, 603 S.W.2d at 173. Therefore, the trial court was correct in entering the judgment notwithstanding the verdict as to the deceptive trade practices claim. Accordingly, Appellant's Point of Error No. One is overruled.

In his second point of error, Henderson asserts that the trial court erred in disregarding the jury's award of damages by granting the judgment notwithstanding the verdict. In his third point of error, Henderson complains of the failure to award attorney's fees. Insofar as the trial court found that no contract, promissory

estoppel, nor violation of the Deceptive Trade Practices Act existed as a matter of law, we need not consider whether submission of the question on damages was erroneous. Likewise, since there was no recovery on the above theories as a matter of law, attorney's fees are unavailable to Henderson. *Fenwal, Inc. v. Mencio Security, Inc.*, 686 S.W.2d 660, 666 (Tex.App.— San Antonio 1985, writ ref'd n.r.e.); *Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640, 644 (Tex.App.—Corpus Christi 1984, no writ). Accordingly, Appellant's Points of Error Nos. Two and Three are overruled.

Finally, in his fourth point of error, Henderson asserts that the compound effect of the errors of the trial court requires this Court to reverse and render, with an award of attorney's fees; alternatively, that this Court should reverse and render on all points and remand to the trial court for findings only as to attorney's fees. In light of the disposition of Points of Error Nos. One through Three, and the reasons stated therein, we overrule Point of Error No. Four.

Having overruled each of Appellant's points of error, the judgment of the trial court is affirmed.