**FROST CRUSHED STONE COMPANY, INC.,**
Appellant,

v.

**ODELL GEER CONSTRUCTION CO., INC., Appellee.**

No. 10–00–282–CV.

Court of Appeals of Texas, Waco.

Dec. 11, 2002.

James E. Studensky, Waco, Reed Jackson, Fairfield, for appellant.

Blake C. Erskine, James F. Twombly, Onstad Law Firm, Austin, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

Odell Geer Construction Company ("Geer") sued Frost Crushed Stone Company ("Frost") under theories of breach of contract, negligent misrepresentation, and promissory estoppel. Before trial, Geer non-suited Frost on all claims except promissory estoppel. Following a jury trial, the court entered judgment in favor of Geer. The jury awarded actual damages in the amount of $40,000 plus attorney's fees. Frost argues that 1) there is no evidence and factually insufficient evidence to support the reliance element of Geer's promissory estoppel claim; 2) there is no evidence and factually insufficient evidence to overcome the statute of frauds defense established by Frost; 3) the statute of frauds bars recovery on Frost's oral promise as a matter of law; 4) the trial court erred in submitting the question of lost profits to the jury; and 5) the trial court erred in permitting Geer to recover attor-

ney fees based on a contingent fee percentage.

## Background

On October 12, 1995, Geer submitted a bid (as a subcontractor) to Ellis McGinnis Construction Company ("Ellis"), the general contractor, to produce and haul "flex base" rock for a highway project. Geer contends Frost offered to supply the rock to Geer for the project in a telephone conversation. On October 30, 1995, Geer sent a letter to Texas Trucking Company ("TTC") offering to contract to haul the "flex base" rock, conditioned upon Geer's receipt of a contract from Ellis. Geer asserts that it relied on Frost's promise to furnish the rock when it contracted with TTC to haul the rock. Ellis subsequently accepted Geer's bid on November 2, 1995. After Ellis accepted Geer's bid, Frost provided a written price quote for the rock. TTC signed a hauling contract with Geer on November 9, 1995, to transport the rock. Several months later, Frost notified Geer that it would be unable to supply the rock as previously promised.

## Promissory Estoppel

 Although promissory estoppel is normally a defensive theory, it is an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise. *See Wheeler v. White*, 398 S.W.2d 93, 96–97 (Tex.1965); *Reyna v. First Nat'l Bank Edinburg*, 55 S.W.3d 58, 70 n. 4 (Tex.App.-Corpus Christi 2001, no pet.); *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 166 (Tex. App.-Houston [14th Dist.] 2000, no pet.); *Bailey v. City of Austin*, 972 S.W.2d 180, 193 (Tex.App.-Austin 1998, pet. denied); *Cherokee Communications, Inc. v. Skinny's, Inc.*, 893 S.W.2d 313, 317 (Tex.App.-Eastland 1994, writ denied); *Henderson v. Texas Commerce Bank–Midland, N.A.*,

837 S.W.2d 778, 781–82 (Tex.App.-El Paso 1992, writ denied). The requisites of promissory estoppel in Texas are: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983); *Bailey*, 972 S.W.2d at 193; *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

The San Antonio Court has held that promissory estoppel is a viable cause of action in bid construction cases. The court held:

> As is true in most, if not all, bid construction cases, the present situation does not involve a contract. Therefore, were we to hold that promissory estoppel does not exist in bid construction cases, this would necessarily mean that, notwithstanding any language or conduct by the subcontractor which leads the general contractor to do that which he would not otherwise have done and, thereby, incur loss or injury, the general contractor would be denied all relief. This proposition is untenable and conflicts with the underlying premise of promissory estoppel. Accordingly, we find that promissory estoppel is a viable cause of action in bid construction cases.

*Traco, Inc. v. Arrow Glass Co., Inc.*, 814 S.W.2d 186, 189 (Tex.App.-San Antonio 1991, writ denied) (citations omitted); *see also Sipco Servs. Marine, Inc. v. Wyatt Field Serv. Co.*, 857 S.W.2d 602, 605 (Tex. App.-Houston [1st Dist.] 1993, no writ) (permitting recovery for promissory estoppel where plaintiff relied on subcontractor's promise to do painting job).

## Reliance

 A central element of promissory estoppel is detrimental reliance. *See Gilmartin v. KVTV–Channel 13*, 985 S.W.2d

553, 558 (Tex.App.-San Antonio 1998, no pet.) (citing *Collins v. Allied Pharmacy Mgt., Inc.,* 871 S.W.2d 929, 937 (Tex.App.-Houston [14th Dist.] 1994, no writ)). Reliance on the promise must be reasonable and justified. *Id.* (citing *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 436 (Tex. 1997); *Sipco,* 857 S.W.2d at 605).

In point one, Frost contends that there is no evidence and factually insufficient evidence to support the reliance element of Geer's promissory estoppel claim. Frost contends that the evidence shows that Geer did not rely on Frost's promises because: 1) Geer did not use Frost's figures in submitting its bid to Ellis; and 2) Frost's written quote came after Geer had contracted with TTC. Geer argues, however, that it detrimentally relied on Frost's oral promise in contracting with TTC to haul the rock.

### No Evidence

When we review a no evidence claim, we consider only the evidence and inferences which tend to support the contested issue and disregard all evidence and inferences to the contrary. *See Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *Beard v. Beard,* 49 S.W.3d 40, 55 (Tex.App.-Waco 2001, pet. denied). We will sustain such a point if: (a) there is a complete absence of evidence of a vital fact; (b) we are barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex. L.Rev. 361, 362–63 (1960)). "More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (quoting *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex. 1995)).

■ Rey Whitener testified that Frost made an oral promise to furnish the rock before Geer contracted with TTC. Instead of hauling the rock on its own, Geer decided to contract with TTC to haul the rock furnished by Frost. The written quote served to confirm Frost's prior oral promise to Geer. Considering only the evidence and inferences which tend to support the contested issue and disregarding all evidence and inferences to the contrary, we hold that the record contains more than a scintilla of evidence that Geer detrimentally relied on Frost's oral promise to furnish the rock. *Havner,* 953 S.W.2d at 711; *Beard,* 49 S.W.3d at 55.

### Factual Sufficiency

■ A factual sufficiency challenge requires us to consider and weigh all the evidence, not just the evidence which supports the verdict. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998) (citations omitted). We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* We may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Id.* Viewing all the evidence for a factual sufficiency challenge, we agree with Frost's contention that Geer did not rely on the information from Frost when submitting a bid to the general contractor (Ellis). The proper issue, however, is whether Geer's contract with TTC was made in reliance on Frost's promises to furnish the rock.

Rey Whitener, Vice–President and Chief Estimator for Geer, testified that Ray Fleet of Frost called him in October 1995

and submitted a price for furnishing the rock on the project. Whitener stated that this initial phone conversation occurred before Geer was awarded the Ellis contract. Geer offered to contract with TTC to haul the rock furnished by Frost in a letter dated October 30, 1995. Whitener received Frost's written price quote confirming the prior conversation in November 1995. Whitener called Frost, and Fleet confirmed the written quote to furnish the rock.

Fleet testified, however, that the first time he had any contact with Geer was in December 1995, after Geer had contracted with TTC.

Frost President, Marcus Frost, testified that Frost sent a price quote directly to Ellis on October 5, 1995, with knowledge that Geer was the subcontractor. He confirmed that Frost later sent a written quote to Geer.

Viewing all the evidence in the record, we do not find the verdict to be so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Whitener testified that Fleet made an oral promise in October to furnish the rock. While Fleet testified that his first contact with Geer came in December, the jury was free to believe Whitener's testimony. *See Lance v. USAA Ins. Co.*, 934 S.W.2d 427, 429 (Tex.App.-Waco 1996, no writ) (the jury is free to believe or disbelieve any witness, regardless of whether the witness's testimony is later controverted). Frost offered no other evidence to controvert Whitener's testimony. Further, the

written price quote from Frost confirms the testimony of Whitener regarding Fleet's earlier promise. Thus, we find the evidence factually sufficient to justify a finding that Geer relied on Frost's oral promise to its detriment in contracting with TTC to haul the rock.

Accordingly, point one is overruled.

### Statute of Frauds as a Defense

■ In point two, Frost argues that there is no evidence and factually insufficient evidence to overcome the statute of frauds defense it asserted. Specifically, Frost asserts that there is no evidence that it promised to sign a written agreement or misrepresented that the statute of frauds had been satisfied.

In point three, Frost argues that the trial court erred in submitting a jury question on a promissory estoppel theory of recovery because the promise is unenforceable as a matter of law under the statute of frauds. Specifically, Frost urges that Geer's claims are unenforceable because no writing exists to satisfy the necessary contractual elements of price, quantity, and time of delivery.

■ This is not a case where promissory estoppel was asserted as a counter-defense to the statute of frauds.[1] Here, as in *Traco*, Geer sought affirmative relief under the equitable doctrine of promissory estoppel based on the premise that it detrimentally relied on Frost's oral bid. *See Traco*, 814 S.W.2d at 188. Frost's statute of frauds arguments ignore Geer's basic

---

1. In some cases, promissory estoppel is used as a counter-defensive plea. *See Sonnichsen v. Baylor University*, 47 S.W.3d 122, 125 (Tex. App.-Waco 2001, no pet.) (citing *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex.1972)). In those circumstances, promissory estoppel may be used to bar the application of the statute of frauds and allow enforcement of an otherwise unen-

forceable oral promise. *Id.* (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex.1982); *"Moore" Burger*, 492 S.W.2d at 937). To avoid the statute of frauds defense to a contract, the promissory estoppel exception set forth in *"Moore" Burger* applies when the party promises to sign a written agreement which itself complies with the statute of frauds. *Id.* at 126; *Nagle*, 633 S.W.2d at 800.

contention and the legal theory under which this suit was brought. *Id.* The written price quote is relevant to this cause of action only because it is further evidence of Frost's oral promise. Accordingly, points two and three are overruled.

### Damages

In point four, Frost argues that the trial court erred in awarding Geer lost profits or benefit of the bargain damages. In the alternative, Frost contends that there is no evidence and factually insufficient evidence to support the damages award.

 Damages recoverable in a case of promissory estoppel are not the profits that the promisee expected, but only the amount necessary to restore him to the position in which he would have been had he not relied on the promise. *See Fretz Const. Co. v. Southern Nat. Bank,* 626 S.W.2d 478, 483 (Tex.1981); *Holt,* 987 S.W.2d at 142. Thus, in the present case, the damages are the amount necessary to place Geer in the position in which it would have been if not for reliance on Frost's promise. The evidence established that Geer could have furnished and transported the rock itself for $5.50 per ton. Geer chose not to produce and haul the rock itself when Frost promised to furnish the rock. Geer relied on Frost's promise in contracting with TTC to haul the rock from Frost's site. Ultimately, Geer was forced to pay TTC $6.59 per ton, instead of $5.50 per ton, to haul the rock from Geer's own site following Frost's refusal to perform. This created a difference of $1.09 per ton to place Geer in its original position. The evidence shows that Geer needed approximately 40,000 tons of rock for the project, and thus, the reliance damages approximate $40,000. This calculation of damages is not based on lost profits. Accordingly, we hold that there is some evidence and factually sufficient evidence to support the damages award. Point four is overruled.

### Attorney's Fees

In point number five, Frost argues 1) that the trial court erred in charging the jury in "Jury Question No. 3" on attorney's fees; and 2) there is no evidence to support the attorney's fees award based on a contingency fee percentage.

### *Failure to Object*

 First, we will address whether Frost properly preserved any complaint regarding the charge error. The record shows that Frost did not object to "Jury Question No. 3." To preserve error in the jury charge, a party must make the trial court aware of the complaint, timely and plainly, and obtain a ruling. *See State Dep't of Highways & Public Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992). Objections must be made before the charge is read to the jury. *See Missouri Pac. R.R. Co. v. Cross,* 501 S.W.2d 868, 873 (Tex.1973); *Operation Rescue–Nat'l v. Planned Parenthood of Houston,* 937 S.W.2d 60, 69 (Tex.App.-Houston [14th Dist.] 1996), *aff'd as modified,* 975 S.W.2d 546 (Tex.1998). By not objecting to question 3, Frost has waived any error with regard to the submission of the question.

### *"No Evidence" of Reasonable Attorney's Fees*

 Next, we address whether Geer presented more than a scintilla of evidence to support the jury's attorney's fees award. Frost cites *Arthur Andersen & Co. v. Perry Equip. Corp.* for the proposition that evidence of a contingent fee agreement alone is not sufficient to support an award of attorney's fees. 945 S.W.2d 812, 817–18 (Tex.1997). In that DTPA cause of action, the Supreme Court found that "the plaintiff cannot simply ask the jury to award a

percentage of the recovery as a fee because without evidence of the factors identified in Disciplinary Rule 1.04, the jury has no meaningful way to determine if the fees were in fact reasonable and necessary." *Id.* at 818. The Supreme Court listed several factors that a fact-finder should consider when determining the reasonableness of a fee, including:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.*

Geer presented evidence of the customary attorney's fees for this type of case in Falls County, Texas. Geer also submitted evidence of the amount of hours spent preparing for trial. Finally, Geer presented evidence of the contingency fee arrangement. Applying the appropriate "no evidence" standard of review, Geer offered more than a scintilla of evidence to support the attorney's fees award. Accordingly, point five is overruled.

The judgment is affirmed.

Justice GRAY dissenting.

TOM GRAY, Justice, dissenting.

The majority has chosen to legislate from the bench and create a new cause of action not previously recognized by the Texas Supreme Court or this court; in other words, the majority has created a monster. The DNA allegedly used to create this monster originated in a reference from the Texas Supreme Court and was given breath by a few of our sister courts of appeals.

I would kill it. I would kill it now. This newly created monster has had a slow start; but if allowed to live, it will grow until it kills many other causes of action. Causes of action like fraud and negligent misrepresentation will be weaker and become unnecessary. The majority chooses to let it live. The issue and the monster: promissory estoppel as a free standing cause of action.

From the research I have conducted, it appears that only one Texas intermediate appellate court has recognized this same issue and still created a new cause of action. The remaining courts that have addressed the issue have done so with "loose language" and without thorough analysis. The majority of this Court fails to properly analyze the cases on which it relies.

The confusion of whether promissory estoppel could be the sole basis of a cause of action started with the Texas Supreme Court's opinion in *Wheeler v. White. Wheeler v. White*, 398 S.W.2d 93 (Tex. 1965). I hardly suspect that the Supreme Court knew they were creating such confusion at the time *Wheeler* was written. In *Wheeler*, the plaintiff (Wheeler) alleged

that White breached a contract to secure a loan or furnish money to finance the construction of improvements on land owned by Wheeler. In the alternative, Wheeler alleged that if the contract was not sufficiently definite, White was estopped from asserting the insufficiency of the contract. White asserted special exceptions to the contract and estoppel allegations, and the trial court sustained them. Wheeler refused to amend his pleadings, and the trial court dismissed his petition. The court of appeals affirmed the trial court's dismissal.

The Supreme Court agreed that the contract was insufficient but noted that "where a promisee acts to his detriment in reasonable reliance upon an otherwise unenforceable promise, courts in other jurisdictions have recognized that the disappointed party may have a substantial and compelling claim for relief." *Id.* at 96. The Court stressed that promissory estoppel did not create a contract where none existed but only prevented a party from insisting upon its strict legal rights when it would be unjust to allow the party to enforce them. *Id.* That is, if for some rule or failure of proof, a contract does not exist or is unenforceable, an equitable remedy may be available. The function of this equitable remedy is defensive in that it estops a promisor from denying the enforceability of a promise. *Id.* The Court accepted the proposition that where there is actually no contract, the promissory estoppel theory may be invoked, thus supplying a remedy which will enable the injured party to be compensated for his foreseeable, definite, and substantial reliance. *Id.* at 97.

No other Texas Supreme Court opinion has taken any of the above language or facts to mean that promissory estoppel is a cause of action independent from a contract or other claim. In fact, no other

intermediate Texas appellate court has construed *Wheeler* in that manner [1]; that is, until today. The majority relies on a string of cases from our sister courts as support for its decision. These cases do not support an independent cause of action.

In *Henderson,* the El Paso court found a contract claim to be unenforceable. *Henderson v. Texas Commerce Bank–Midland, N.A.,* 837 S.W.2d 778, 781 (Tex. App.-El Paso 1992, writ denied). On its way to finding that the appellant did not prove promissory estoppel either, it unfortunately stated, "Promissory estoppel is an available cause of action...." *Id.* It attributed this statement to *Wheeler. Id.* at 782. The Supreme Court in *Wheeler* did not say promissory estoppel was an available cause of action. The Court said it was an equitable remedy. In any event, the appellant in *Henderson* was not relying only on promissory estoppel and no other claim. Thus, this case does not help the majority.

In *Cherokee Communications,* the Eastland court, relying on *Henderson,* attributed the same statement about promissory estoppel to *Wheeler. Cherokee Communications, Inc. v. Skinny's, Inc.,* 893 S.W.2d 313, 317 (Tex.App.-Eastland 1994, writ denied). Again, that is not what *Wheeler* said. Cherokee and Skinny's each filed motions for summary judgment. The trial court granted the motion by Skinny's which claimed the written agreements between the parties lacked mutuality. Cherokee was not relying solely on promissory estoppel as a cause of action.

The next court to perpetuate this misconstruction of *Wheeler* was the Austin court. *See Bailey v. City of Austin,* 972 S.W.2d 180 (Tex.App.-Austin 1998, pet. denied). The Austin court relied on the

---

1. The San Antonio court in *Traco,* which is discussed later, did not rely on *Wheeler.*

statement in *Cherokee. Id.* at 193. In *Bailey*, the court affirmed the summary judgment on the appellant's breach of contract claim because no valid contract existed. It reversed the summary judgment on appellant's promissory estoppel claim because the City did not conclusively disprove any element of promissory estoppel. Thus, promissory estoppel was still derived from the assertion of an unenforceable contract claim.

Then in *Boales,* the 14th Court of Appeals did not rely on *Bailey, Cherokee* or *Henderson. See Boales v. Brighton Builders, Inc.,* 29 S.W.3d 159 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Instead, it relied on a case from Corpus Christi for the proposition that "Although promissory estoppel is usually a defensive plea, it can be used by a plaintiff as an affirmative ground of relief." *Id.* at 166 (citing *Donaldson v. Lake Vista Community Improvement Ass'n,* 718 S.W.2d 815, 818 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.)). This statement can be traced back to the Fort Worth court which noted that prior to *Wheeler,* language about promissory estoppel might have caused one to believe that it has a purely defensive use. *Southwest Water Services, Inc. v. Cope,* 531 S.W.2d 873, 877 (Tex. App.-Fort Worth 1975, writ ref'd n.r.e.). However, because of *Wheeler,* the Fort Worth court decided that the law was now settled that there may be appropriate uses by a plaintiff as a ground of entitlement of relief. *Id.* This concept is what we termed a "counter-defensive" theory in *Sonnichsen. Sonnichsen v. Baylor,* 47 S.W.3d 122, 125 (Tex.App.-Waco 2001, no pet.). Nowhere in *Boales, Southwest,* or the cases in between, did the plaintiff plead *only* promissory estoppel.

The most recent case relied on by the majority is another opinion from Corpus Christi. *See Reyna v. First Nat. Bank in Edinburg,* 55 S.W.3d 58 (Tex.App.-Corpus Christi 2001, no pet.). In *Reyna,* the court stated, "Reyna is asserting promissory estoppel. Promissory estoppel is a cause of action available to a promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise." *Id.* at 70, n. 4. This statement was in a footnote that had no impact on the decision by the court.

In each of the cases cited above, the plaintiffs sued on causes of action other than promissory estoppel. They then asked for the equitable relief of promissory estoppel if they failed to establish their other causes. The odd-duck in all of this mess is a case cited by the majority from the San Antonio court which stated that most bid construction cases do not involve a contract thus promissory estoppel is a viable cause of action in those cases. *Traco, Inc. v. Arrow Glass Co., Inc.,* 814 S.W.2d 186, 189 (Tex.App.-San Antonio 1991, writ denied). First, the majority provides no analysis as to why this case deserves citation. The majority has not decided that there is no contract. It doesn't even state that it will follow San Antonio's reasoning. So I must ask: What's the point of citing this case? Second, if the majority is going to follow *Traco,* then it needs to conduct a review of the cases cited by *Traco* that "supports" the San Antonio court's position. *Traco* relies on other jurisdictions to apply promissory estoppel to bid construction cases. Seeing that the *Traco* court misstates the holdings from *Wheeler* and a case from Fort Worth, I would not take for granted its interpretations of other jurisdictions' case-law are correct.[2]

---

2. The majority also cites a case from the First Court of Appeals to bolster its citation of

*Traco;* however, in that case, it is unclear whether the plaintiff sought relief under any

In this dissent, I would like to take the time to detail and further discuss these and other Texas cases that have dealt with this issue. But, because a majority of this Court has already reached its decision and because of the time pressures to clear cases off the dockets, I am limited to this abbreviated analysis and discussion.

In conclusion there is simply no need to create a new cause of action. Promissory estoppel has a place as an equitable remedy when some other cause of action fails and equity demands protection of one of the parties. But equity should only be the last resort when legal remedies fail for some reason. I believe, based on the research conducted, that this case presents a very unique opportunity to distinguish between the proper role of promissory estoppel as a limited remedy rather than as a free standing cause of action. In this instance, Geer dismissed all its claims for legal remedies and pursued only promissory estoppel. The relief the majority has delivered to Geer is exactly the same Geer would have recovered if it had proven a breach of contract. But Geer dismissed that claim. Why should it be allowed the same relief under an equitable remedy that it chose not to seek as a legal remedy? For the reasons expressed herein, I respectfully dissent.

theory other than promissory estoppel. *Sipco Servs. Marine, Inc. v. Wyatt Field Serv. Co.,* 857 S.W.2d 602, 605 (Tex.App.-Houston [1st Dist.] 1993, no writ).