Tom L. BOALES, Brenda K. Boales, Mark S. Coalmer, Lynn K. Coalmer, James W. Dunbar, Raynoldo Garcia, Laura P. Garcia, Shaun C. Hills, Carla D. Hills, Linda Lanier, John M. Simmons, Diane M. Simmons, Ronald H. Vitulli, and Connie S. Vitulli, Appellants,

v.

BRIGHTON BUILDERS, INC., George Wimpey, Inc., and George Wimpey Of Texas, Inc., Appellees.

No. 14–99–00535–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 6, 2000.

Rehearing Overruled Sept. 21, 2000.

Joseph F. Nistico, Jr., W. Lance Stodghill, Richard Paul Martini, Houston, for appellants.

C. Ed Harrell, Stacey Beth Saunders, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices HUDSON and WITTIG.

## O P I N I O N

DON WITTIG, Justice.

Tom L. Boales and multiple homeowners in Aberdeen Trails subdivision appeal from a no-evidence summary judgment and dismissal on special exceptions granted in favor of Brighton Builders, Inc., George Wimpey, Inc., and George Wimpey of Texas, Inc. Because we find that the Water Code does not preclude some of the homeowners' causes of action, we reverse and remand for a trial on the merits of those claims. We also affirm multiple rulings by the trial court on discovery, special exceptions, and partial summary judgment on conspiracy, effectively dismissing many of the homeowners' other contentions.

## I. Background

Appellants allege that from 1992 to 1994, appellees defrauded them on their new home purchase made in the Aberdeen Trails subdivision. The subdivision was in Municipal Utility District No. 14, which was established to provide water, sewer, drainage, and flood control facilities in the district. Appellants complain that appellees told them that subdivision taxes were low because the utility district bonds already had been retired and that any future tax increases were to be limited to increases to deal with the increased cost of maintenance. Appellants also allege that appellees told them that the utility district encompassed certain nearby commercial properties and that the taxes paid by these properties helped pay off the bonds and would help keep taxes low. In reality, appellants allege in their suit, the district

had not yet issued bonds when appellants purchased their homes. After appellants purchased their homes, the district issued bonds and assessed taxes to pay for the bonds, increasing appellants' tax rate by 700% in 1994. Appellants also complain that the commercial properties mentioned by appellees fell outside the district.

Appellants originally consisted of 117 individuals who sued the developer, Wimpey, and the builders from whom they purchased their homes, Brighton and Perry Homes, a joint venture. Subsequently, in an attempt to expedite the resolution, the trial court severed the case, creating an "A" case involving the sale of eight homes in the subdivision. The trial court then granted several special exceptions and motions for summary judgment dismissing all claims made against Perry Homes by Perry Homes homeowners Tom L. Boales, Brenda K. Boales, James W. Dunbar, Shaun C. Hills, Carla D. Hills, and Linda Lanier. The court then severed the claims of the Perry Homes homeowners in the "A" case into a "B" case so the judgment would be final and appealable. The "B" cause came before this court as *Boales v. Perry Homes, a Joint Venture*, No. 14–98–00975–CV, 2000 WL 674922 (Houston [14th Dist.] May 25, 2000, no pet. h.) (not designated for publication). The trial court likewise granted several special exceptions and motions for summary judgment dismissing all of the claims made against Brighton and Wimpey. These causes of action against Brighton and Wimpey were severed into this "C" case so the judgment would be final and appealable.

The causes of action asserted by appellants are fraud, fraud in a real estate transaction, breach of warranty, violation of the Deceptive Trade Practices Act, negligence, negligence per se, promissory estoppel, conspiracy to violate the section 32.47 of the Penal Code, conspiracy to commit real estate fraud, conspiracy to violate the DTPA, fraudulent inducement, and money had and received. Appellants

also assert a claim of breach of fiduciary duty against Wimpey and breach of contract against Brighton.

## II. Discussion

### A. Water Code Preemption

■ In their second point of error, appellants complain the trial court erred in sustaining appellees' special exceptions on grounds that the Water Code preempted appellants' causes. We will deal with this question first because this is the only issue advanced at trial that addresses all of the appellants' claims.

■ When a trial court dismisses a case upon special exceptions for failure to state a cause of action, we review that issue of law under a *de novo* standard. *See Sanchez v. Huntsville Indep. Sch. Dist.*, 844 S.W.2d 286, 288 (Tex.App.-Houston [1 st Dist.] 1992, no writ). We must accept as true all material factual allegations and all factual statements reasonably inferred from the allegations set forth in the respondent's pleadings. *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 240 (Tex.1994).

Section 50.301 of the Water Code requires any person who proposes to sell or convey real property in a utility district to provide written notice to purchasers that the property is in the district and may be subject to district taxes. *See* Act of May 29, 1989, 71 st Leg., R.S., ch. 935, § 1, 1989 Tex. Gen. Laws 3977–78.[1] Section 50.301(n) of the code provides that the remedies detailed in subsections (*l* ) and (m) are the exclusive remedies for violations of the section. *See id.* at 3979. Subsection (n) provides, in part, as follows:

Notwithstanding any part or provision of the general or special laws or the common law of the state to the contrary, the relief provided under Subsection (*l* ) and (m) shall be the exclusive remedies for a purchaser aggrieved by the seller's fail-

ure *to comply with the provisions of this section.*

*Id.* [Emphasis added.]

■ Under subsection (*l* ) if the seller fails to comply with the provision of the section, the purchaser can recover all of the costs relative to the purchase of the property, plus interest and attorney's fees (rescission). Under subsection (m) the purchaser can recover maximum damages of $5,000, plus attorney's fees. *See id.* We must give full effect to an unambiguous statute according to all of its terms and context. *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998).

The statute plainly limits the remedies but expressly only for failure to comply with the notice provisions of section 50.301. The substance of the plaintiff-appellants' complaints are not that appellees failed to comply with the notice requirements, but that appellees actively misrepresented facts to induce appellants to purchase homes. Although appellees committed some technical errors in complying with section 50.301, appellants do not complain primarily of appellees' failure to comply with that section. In fact, even had appellees complied with section 50.301, appellants would have a cause of action for misrepresentations falling outside the purview of section 50.301.

The Legislature did not express an intent that section 50.301 immunize property sellers from any liability arising from all fraudulent acts committed during the sale of property within a utility district. We hold the Water Code does not preclude appellants' extra-statutory causes of action. We sustain appellants' second issue.

### B. Conspiracy

■ In their first point of error, appellants complain the trial court erred in granting partial summary judgment to ap-

---

1. Amending Tex. Water Code § 50.301; current version at Tex. Water Code Ann. § 49.452 (Vernon 2000).

pellees on appellants' claims of conspiracy to defraud, to defraud in a real estate transaction, and to violate the DTPA. Appellees moved for summary judgment on the conspiracy claims on grounds that: (1) the failure to file certain sale and purchase agreements (discussed below) is not an unlawful act; (2) no case law suggests that violations of the DTPA, or real estate fraud can be the underlying tort to support a conspiracy claim; (3) plaintiffs cannot show a meeting of the minds to commit unlawful acts; and (4) there is no evidence of an object or common purpose to be accomplished, meeting of the minds on common purpose, or one or more unlawful or overt acts where the parties understood that the other parties shared a common purpose.

If, after adequate time for discovery, no probative evidence exists of one or more essential elements of a claim on which a party would have the burden of proof at trial, a no-evidence summary judgment is proper. *See* TEX.R. CIV. P. 166a(i); *Esco Oil v. Sooner Pipe & Supply Corp.*, 962 S.W.2d 193, 197 n. 3 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). We review a no-evidence summary judgment under the same legal sufficiency standard as a directed verdict. *See Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 432 (Tex.App.-Houston [14th Dist.] 1999, no pet. h.) We view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). We will sustain a no-evidence point if: (1) there is a complete absence of a vital fact, (2) we are barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered is no more than a mere scintilla, or (4) the evidence offered conclusively establishes the opposite of a vital fact. *See Lampasas*, 988 S.W.2d at 432. If the proffered evidence is so weak as to create no more than a "mere surmise or suspicion" of a vital fact, less than a scintilla of evidence exists because such evidence lacks

probative force, and in legal effect, is no evidence at all. *See Kindred v. Con/ Chem., Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

▮ An actionable civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *See Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). The elements are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Id.*

▮ As proof of a common object or purpose, appellants cite (1) the defendant-appellees' desire to sell homes in the subdivision, (2) the substantially identical misrepresentations, (3) the failure to file of record certain sales and purchase agreements signed by appellees that stated that utility district bonds had not yet been sold and that provided that the agreements were not to be filed of record. Defendant-appellees' common purpose to sell homes, the signing of sales and purchase agreements, and the failure to file those agreements of record will not support a finding of civil conspiracy. None of the acts is wrongful and the agreement to perform a lawful act cannot serve as the basis for a finding of conspiracy. *See Times Herald Printing Co. v. A.H. Belo Corp.*, 820 S.W.2d 206, 216–17 (Tex.App.-Houston [14th Dist.] 1991, no writ). Nothing is unlawful about selling homes, signing otherwise proper agreements, and failing to file those agreements of record when not otherwise required to do so by law. The only evidence proffered to show a meeting of minds to commit unlawful activity is the substantially similar representations on the part of sales representatives of Brighton and Wimpey. These sales representations, by non-principals, without more, constitute a mere scintilla of evidence of a meeting of minds of the principals to accomplish an unlawful purpose. Although appellees' sales people did offer similar—

not identical—representations regarding why district taxes were low, this evidence of unlawful common purpose, standing alone, is too slight to support a conspiracy claim. The trial court did not err in granting partial summary judgment in favor of appellees on the appellants' civil conspiracy claims. We overrule appellants' first point of error

## C. Failure to File Sale and Purchase Agreements

In its third point of error, appellants complain the trial court erred in granting appellees' special exceptions on appellants' conspiracy claims based on appellees' failure to file of record certain sales and purchase agreements between Brighton and Wimpey. The trial court signed three orders—January 23, 1998, January 30, 1998; and June 29, 1998—dismissing appellant-plaintiffs' conspiracy claims based on conspiracy to violate section 32.47 of the Penal Code and the DTPA. The court included in its orders certain language stating the court's belief that the failure to file the sale and purchase agreements did not violate the Penal Code or the Water Code. Appellants do not appeal those particular portions of the orders dealing with the Water Code. The court in its order of June 29, which related to Wimpey only, also stated that the failure to file the sale and purchase agreements did not violate the DTPA.

■ Brighton and Wimpey signed certain sales and purchase agreements containing provisions relating to plans to issue bonds and impose property taxes. The agreements further stated that the contracts were not to be filed of record in the county property records. Nothing in state law requires such agreements to be filed of record. There could be any number of legitimate business reasons why the parties did not wish to file their agreements of record. This failure to file, being a lawful act, does not constitute a violation of the DTPA. As for section 32.47 of the Penal Code,[2] this Penal Code section deals with the switching of price tags or the alteration of a trade mark. It is not intended to require parties to file business agreements of record when state law does not otherwise require such filing.

Appellants argue that the trial court's language stating that the failure to file the agreements is not a violation of the Penal Code or the DTPA are advisory opinions. We construe the court's orders as either summary judgment orders or dismissals on special exceptions related to certain conspiracy-related causes. The failure of appellants to raise a material fact issue regarding meeting of the minds, discussed above, entitled appellees to summary judgment on all conspiracy-related causes of action. We view the specific orders discussed here simply as additional grounds on which the trial court granted summary judgment or special exceptions in favor of appellees regarding conspiracy to violate the Penal Code and the DTPA. We view the complained-of language as the trial court's explanation of why it acted and a delineation of the legal issued being decided. We discuss the issues here in the interest of judicial economy. The trial court did not err in dismissing appellants' conspiracy claims that were based upon appellees' failure to file the sale and purchase agreements. We overrule appellants' third point of error.

2. The Penal Code provides, in part, follows:
    (a) A person commits an offense if, with intent to defraud or harm another, he destroys, removes, conceals, alters, substitutes, or otherwise impairs the verity, legibility, or availability of a writing, other than a governmental record.
    (b) For purposes of this section, "writing" includes:

    (1) printing or any other method of recording information;
    (2) money, coins, tokens, stamps, seals, credit cards, badges, trademarks;
    (3) symbols of value, right, privilege, or identification; and
    (4) labels, price tags, or markings on goods.
TEX. PEN.CODE ANN. § 32.47 (Vernon 1994).

### D. Negligence Per Se

In their fourth point of error, appellants complain the trial court erred in dismissing their claims for negligence per se, based on violation of section 32.47 of the Penal Code and the DTPA, and promissory estoppel.

Negligence per se tort claims are established when a plaintiff shows that a defendant, without excuse, violates a statute or ordinance setting an applicable standard of care if the statute is designed to prevent an injury to that class of persons to which the injured party belongs. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 312 (Tex.1987). Because as a matter of law, the acts complained of—the failure to file the sale and purchase agreements—do not constitute a violation of the Penal Code, as alleged, such acts cannot constitute a basis for a negligence per se claim. The DTPA facially does not establish an applicable standard of care for imposing liability based on negligence per se. The act, rather, is a comprehensive consumer-protection plan establishing its own penalties. *See Johnson v. Sawyer,* 47 F.3d 716, 729 (5 th Cir.1995) (recognizing that Texas has no law creating common law cause of action for statutory violation for which violation there is express and comprehensive statutory cause of action). Any presumed violation of the DTPA here does not constitute negligence per se sufficient to establish liability. We overrule appellants' fourth point of error.

### E. Promissory Estoppel

In their fifth issue, appellants complain the trial court erred in dismissing their claims based on promissory estoppel. Although the trial court does not specifically state whether it was granting summary judgment or special exceptions as to promissory estoppel, we presume the trial court acted on grounds that plaintiff-appellants failed to state a cause of action.

Although promissory estoppel is usually a defensive plea, it can be used by a plaintiff as an affirmative ground of relief. *See Donaldson v. Lake Vista Community Improvement Ass'n,* 718 S.W.2d 815, 818 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.). The requisites of promissory estoppel are (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. *See English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983). The misrepresentations alleged by appellants may not be promises in the strict sense, that is, promises that the property taxes will not rise, however, plaintiff-appellants make clear in their pleadings their complaint. Appellants allege that appellees made certain representations that appellees intended appellants to rely upon, that appellants foreseeably relied on the representations, and that appellees are estopped to deny the foreseeability of appellants' reliance. The trial court erred in dismissing appellants' claims based upon promissory estoppel. We sustain appellants' fifth issue.

### F. Ratification, Estoppel, and Adoption

Appellants in their sixth point of error complain that the trial court erred in granting Wimpey's special exceptions concerning ratification and adoption and Brighton's special exceptions concerning ratification and estoppel. At the trial court level, appellees argued that ratification, adoption, and estoppel are not causes of action and should be dismissed. Appellants did not plead the issues as causes of action but rather as contradefensive issues, that is, to counter any possible argument by appellees that the acts of their sales representatives could not be attributed to appellees. Although appellants were not required to plead such issues, *see McDonald v. Clemens,* 464 S.W.2d 450, 455 (Tex.Civ.App.-Tyler 1971, no writ), nothing in the rules prohibits them from pleading such issues. To the extent that the trial court dismissed ratification, estoppel, and adoption as causes of action, it did not err.

To the extent that the trial court may have stricken from plaintiff-appellants' pleadings contradefensive allegations regarding the issues, it erred. Such error is harmless, however. *See* Tex.R.App. P. 44.1. If appellees later assert a defense that the sales representatives lacked authority, appellants would be free at that point to counter the defense with pleadings and evidence of ratification, adoption, or estoppel. We overrule appellants' sixth point issue.

## G. Release

■■ In its seventh point of error, appellants complain that the trial court erred in granting partial summary judgment in favor of appellees as to Ronald and Connie Vitulli on grounds that the Vitullis had released any claims against Brighton.

The Vitullis allege that Leta Fitzgerald, a Brighton sales representative, made certain representations regarding an easement adjacent to their property. The Vitullis on appeal allege that they signed a release concerning only misrepresentations as to the easement. Brighton agues that the release contains language releasing all claims against Brighton.

The release provides, in part, as follows:

WHEREAS, it has come to Brighton's attention that Leta Fitzgerald may have mistakenly advised the Purchasers [Vitullis] that nothing would be built adjacent to their fence behind the Property since there was a Southwestern Bell Telephone Co. easement behind their lot; and

WHEREAS, improvements can be built on the commercial property between the Southwestern Bell Telephone Company easement and the rear property line of the Property, and

WHEREAS, without admitting liability or culpability, Brighton agrees to settle *this misunderstanding* . . .

. . . .

The Purchasers hereby RELEASE, ACQUIT AND DISCHARGE Brighton

. . . from all matters, causes of action, accounting, suits, controversies, agreements, damages, claims and demands, known or unknown, arising out of pertaining to, or associated with any statement by Leta Fitzgerald regarding the property.

The Purchasers intend "claim" to mean any and all demands, rights, claims, damages, exemplary damages, lawsuits, common law, federal statutory or federal constitutional causes of action, costs, judgment, penalties, executions, and attorneys' fees . . . that they have or ever may have against Brighton that have arisen or ever may arise directly or indirectly out of *this claim*. [Emphasis added.]

■■ Releases must be construed like all other contracts. *See Williams v. Glash,* 789 S.W.2d 261 (Tex.1990). If a release is capable of a certain or definite legal meaning or interpretation, then effect must be given to the parties' intentions as expressed within the language of the release. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). A release will be construed in light of the facts and circumstances surrounding its execution. *See Tricentrol Oil Trading, Inc. v. Annesley,* 809 S.W.2d 218, 221 (Tex.1991). A general, categorical release clause must be construed narrowly. *See Sanus/New York Life Health Plan, Inc. v. Dube–Seybold–Sutherland Management, Inc.,* 837 S.W.2d 191, 197 (Tex.App.-Houston [1st Dist.] 1992, no writ). Any claims not clearly within the subject matter of a release are not discharged, even if such claims existed at the time the release was executed. *Id.* The releasing instrument must "mention" the claim to be released. *See Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 938 (Tex.1991).

Here, the release by its own language concerns the misrepresentations made regarding the adjacent easement. Any claims Fitzgerald may have made about tax rates or whether certain commercial properties fell within the district do not

clearly fall within the release nor are they mentioned in the release. We must construe the general release language narrowly and do not find that the parties intended to release Brighton from all possible misrepresentation claims. The trial court erred in granting summary judgment to Brighton as to the homeowner Vitullis on the grounds of release. We sustain appellants' seventh issue.

## H. Protective Order

In their eighth point of error, appellants complain the trial court erred in issuing a protective order concerning plaintiffs' attempt to depose John Krugh, general counsel for Perry Homes. After appellants sought to depose Krugh, Perry Homes sought a protective order on grounds that Krugh is an "apex" employee and that any information sought is protected by the lawyer-client privilege. Appellants countered by arguing that Krugh is not an "apex" employee, that even if he is an "apex" employee, he has unique and superior knowledge of discoverable facts, and that the material is not protected by the lawyer-client privilege.

We review a trial court's decision regarding a discovery-related protective order under an abuse of discretion standard. *See Bloyed v. General Motors Corp.*, 881 S.W.2d 422, 437 (Tex.App.-Texarkana 1994), *aff'd*, 916 S.W.2d 949 (Tex. 1996). Under the lawyer-client privilege, the client may refuse to disclose and may prevent any other person from disclosing confidential communications made for the purpose of facilitating rendition of legal services to client. *See* Tex.R. Evid. 503(b); *Keene Corp. v. Caldwell*, 840 S.W.2d 715, 719 (Tex.App.Houston [14th Dist.] 1992, no writ). The privilege extends to all matters concerning litigation or business transactions, regardless of whether the matters are pertinent to the matter for which the attorney was employed. *See Williams v. Williams*, 108 S.W.2d 297, 299 (Tex.Civ. App.-Amarillo 1937, no writ). The statements and advice of the attorney to the client are as protected as the communications of the client to the attorney. *See Boring & Tunneling Co. of Am. v. Salazar*, 782 S.W.2d 284, 289 (Tex.App.-Houston [1st Dist.] 1989, orig. proceeding).

First, we note that the "apex" doctrine does not apply. Appellants do not seek to depose Krugh merely because of his corporate position. Rather they seek to depose him because they allege he has first-hand knowledge of certain facts, that is, the advice he gave to a Perry Homes vice president during contract negotiations between Perry Homes and Wimpey and to Perry Homes' sales representatives during training sessions regarding buyer disclosure and the DTPA. *See Simon v. Bridewell*, 950 S.W.2d 439, 442 (Tex.App.-Waco 1997, no writ) ("apex" doctrine applies where corporate officer has been noticed for deposition merely because of officer's corporate position; an officer with first-hand knowledge of relevant facts cannot avoid deposition because of "apex" status).

Under the lawyer-client privilege, the legal advice given to Perry Homes employees and to the Perry Homes vice president during contract negotiations with Wimpey likely are protected by the lawyer-client privilege. Although appellants argue that third-parties were at the training sessions between Krugh and Perry Homes sales representatives and thus the lawyer-client privilege does not apply, the record before us does not show that third parties were present during the sessions. Because the evidence sought by appellants likely is significantly protected by the lawyer-client privilege, the trial court did not abuse its discretion by granting appellees' motion for a protective order. We overrule appellants' issue.

## I. DTPA

In a single crosspoint, appellees complain the trial court erred in denying their motion for summary judgment on grounds that appellants below as a matter

of law were not "consumers," as defined by the DTPA.

 On appeal, in the interest of judicial economy, we may review grounds for summary judgment asserted at trial and preserved for appeal even if such grounds were rejected by the trial court. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996); *Augusta Court Co–Owners' Ass'n v. Levin, Roth & Kasner, P.C.*, 971 S.W.2d 119, 123 (Tex. App.-Houston [14th Dist.] 1998, writ denied). A DTPA plaintiff must plead and prove "consumer" status. *See* Tex. Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987); *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex.1987). Additionally, the goods or services purchased must form the basis of the plaintiff's complaint. *See Melody Home*, 741 S.W.2d at 352. The DTPA is designed to protect consumers from any deceptive trade practice made in connection with the purchase or lease of goods or services. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 541 (Tex.1981). Goods include real property purchase or leased for use. *See* § 17.45(1).

The DTPA can make actionable, misrepresentations about real estate. *See Chastain v. Koonce*, 700 S.W.2d 579, 581 (Tex.1985) (purchasers of lots, who complained of misrepresentations relating to other nearby lots, were "consumers" even though they complained about lots other than the lots purchased); *Sanchez v. Guerrero*, 885 S.W.2d 487, 490 (Tex.App.-El Paso 1994, no writ) (broker's failure to mention that home's previous owner was child molester supports finding of DTPA violation). Here, appellants complain about the tax rates on their homes and allege that appellees made misrepresentations to induce them to buy the homes. The appellants are complaining about an aspect of the real estate and the transaction involved. *See Chastain*, 700 S.W.2d at 581. The trial court did not err in denying summary judgment in favor of appellees on grounds that appellants were not consumers under the DTPA. We overrule appellees' single crosspoint.

## III. Conclusion

We sustain appellants' second, fifth, and seventh issues, and overrule all appellants other points. We overrule appellees' single crosspoint. We affirm the trial court's judgment concerning all conspiracy-related and negligence per se claims. We reverse the judgment as to all other causes of action and remand for a trial on the merits or other proceedings in accordance with this opinion.