Motion for Rehearing Granted; Opinion of January 8, 2004 Withdrawn;
Affirmed and Substitute Opinion filed November 18, 2004









Motion for Rehearing Granted; Opinion of January 8,
2004 Withdrawn; Affirmed and Substitute Opinion filed November 18, 2004.

 

                                                                                                                                                            

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-00447-CV

____________

 

KOSTI SHIRVANIAN,
KOSTI SHIRVANIAN AND MARIAN SHIRVANIAN IN THEIR CAPACITIES AS TRUSTEES OF KOSTI
SHIRVANIAN AND MARIAN SHIRVANIAN FAMILY TRUST, AND RALPH TUFENKIAN AND SAVEY
TUFENKIAN IN THEIR CAPACITIES AS TRUSTEES OF TUFENKIAN FAMILY TRUST, Appellants

 

V.

 

EARL E. DEFRATES,
RODNEY PROTO, AND WASTE MANAGEMENT, INC., Appellees

 



 

On Appeal from the 189th
District Court

Harris County, Texas

Trial Court Cause No. 00-00211

 










O
P I N I O N   O N   R E H E A R I N G

We
originally issued an opinion on January 8, 2004 in favor of the appellants, the
Shirvanians, holding that the suit they brought against the appellees was a
direct action—not a derivative suit—and therefore not barred by an earlier
derivative suit against appellees. That decision applied Delaware law.  However, while the appeal was on motion for
rehearing, the Delaware Supreme Court issued an opinion clarifying when a suit
is derivative in that state.  Tooley
v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004).  Based on the direction given by that opinion,
we grant appellees’ motion for rehearing. 
The opinion issued January 8, 2004 is withdrawn and the following
opinion is issued in its place.

Procedural Posture of the Appeal

Appellants Kosti
Shirvanian and various family trusts (“Shirvanians”), formerly the largest
non-institutional shareholders of Waste Management, Inc., brought suit against
appellees Waste Management, and former chief executives of Waste Management,[1]
Earl E. DeFrates and Rodney Proto (“Waste Management Group”).  The Shirvanians asserted claims of fraud,
intentional misrepresentation, negligent and grossly-negligent
misrepresentation, and conspiracy, alleging that Proto and DeFrates induced
Kosti Shirvanian and his sister, Savey Tufenkian, not to follow through with
their plans to sell 3 million shares of Waste Management stock.  The trial court granted appellees’ motion for
summary judgment and sustained appellees’ special exceptions without specifying
the basis for its rulings.  Finding that
the lawsuit the Shirvanians bring is derivative in nature and barred by res
judicata, we affirm. 

Standards of Review








After the Shirvanians sued them, appellees
moved for summary judgment as an alternative to their special exceptions.  The trial court entered one order in which it
sustained the special exceptions and granted summary judgment and dismissed the
case with prejudice, and the court later entered a final judgment.  Ordinarily, we review a trial court’s
dismissal of a case upon special exceptions for an abuse of discretion.  Melendez v. Exxon Corp., 998 S.W.2d
266, 273 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  However, “[w]hen a trial court dismisses a
case upon special exceptions for failure to state a cause of action, we review
that issue of law under a de novo standard.”  Boales v. Brighton Builders, Inc., 29
S.W.3d 159, 163 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  We must accept as true all material factual
allegations and all factual statements reasonably inferred from the allegations
set forth in the appellants’ pleadings.  Id.
(citing Sorokolit v. Rhodes, 889 S.W.2d 239, 240 (Tex. 1994)).

Appellees filed a traditional motion for
summary judgment, and therefore had the burden to show that no genuine issue of
material fact exists and that they are entitled to judgment as a matter of
law.  Tex.
R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985).  As defendants, they
must conclusively negate at least one essential element of each of the
Shirvanians’ causes of action or conclusively establish each element of an
affirmative defense.  Science Spectrum,
Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  The appellees’ summary judgment motion rested
solely on their affirmative defenses.  In
deciding whether a disputed material fact issue exists precluding summary
judgment on appellees’ affirmative defenses, we resolve every reasonable
inference in favor of the Shirvanians and take all evidence favorable to them
as true.  Id. at 911.  Because the trial court’s order does not
specify the grounds upon which it relied in granting appellees’ motion, we will
uphold the judgment if it is properly supported on any ground by competent
summary judgment evidence.  Star-Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).

                                       Relevant
Factual Background








Waste Management’s shares are publicly
traded.  As of January, 1999, the
Shirvanians owned over 6.1 million shares of Waste Management stock,
representing approximately 9.5% of all then-issued shares of Waste Management
stock.  They also owned options to
purchase an additional 4 million shares. 
During the time period relevant to this lawsuit, Shirvanian and his
sister, along with the family trusts named above, were the largest
non-institutional investors in Waste Management.  Shirvanian was Waste Management’s single
largest shareholder.  Waste Management
had acquired USA Waste Services, Inc., which had previously acquired
Shirvanian’s company, Western Waste, Inc. 
Both Shirvanian and Tufenkian had sat on the board of directors of USA
Waste Services.  

Shirvanian alleges that he decided, with
the advice of financial advisors and other professionals, to diversify his
stock holdings and sell shares of Waste Management, but he could not do so
until 1999 because his shares were restricted. 
In the interim, he borrowed against his Waste Management shares and
invested in other stocks, thereby incurring margin debt in excess of $100
million.  After consulting with five
accounting firms, he and his advisers planned to sell between 2.5 and 3 million
shares of Waste Management at a rate of 50,000 to 100,000 shares per day
between mid-April or early May and late June of 1999, after the sale
restrictions were removed.  Tufenkian’s
trust planned to sell 20,000 shares per month during the same time frame.  Tufenkian did not document her plan to sell
Waste Management shares during this time period, and the parties dispute
whether any writing reflects Tufenkian’s intent to sell Waste Management
shares.  In any event, in January of
1999, Shirvanian sold approximately 150,000 of his shares at about $51.00 per
share.  He sold additional shares on four
occasions in March, April, and May of 1999. 
Tufenkian sold 60,000 shares in increments of 20,000 before May of 1999.









In May, “out of a sense of ‘professional
duty,’” Shirvanian informed Proto, then president and chief operating officer
of Waste Management, and DeFrates, then chief financial officer, of the
Shirvanians’ intent to sell Waste Management shares.  Shirvanian testified that he called Proto to
get advice as to whether he should sell his shares because he “was very
involved with Waste Management.”  As he
explained, “Stocks I buy from outside area, I’m, basically, not that close to
the situation.”  In an effort to induce
Shirvanian and Tufenkian not to sell their shares, Proto and DeFrates
fraudulently misrepresented the financial well-being of Waste Managment.  Shirvanian and Tufenkian said these
misrepresentations were made during conversations between Shirvanian or
Tufenkian, on the one hand, and Proto and DeFrates, on the other hand, (1) at a
February 14, 1999 wedding reception, (2) during a telephone conversation
between Shirvanian and Proto in May, (3) during a conversation between
Shirvanian, Proto, and DeFrates at the Dallas, Texas airport, and (4) during at
least two telephone conversations between Proto and Shirvanian after a drop in
Waste Management’s stock on July 7, 1999. 
Shirvanian relayed the content of his conversations with Proto and
DeFrates to his sister.  The specific
alleged misrepresentations are as follows: 

·                     
Shirvanian
called Proto in May of 1999 to tell him about his intent to sell shares because
they “were friends . . . knew each other . . . [and Shirvanian] trusted him
[Proto], and . . . kindly took his advice . . . .”  Proto urged Shirvanian not to sell, saying
that Waste Management “is sound,” “do not sell your stock,” and “hold your
shares.”  He also said Waste Management’s
earnings were “great” and synergies were “great”; the stock would be “going to
$70 per share”; and that management was “holding some things back” that he could
not divulge to Shirvanian.  Proto said
Waste Management would “meet its earnings projections” for 1999; he anticipated
no surprises; and no unfavorable financial circumstances were known or about to
be revealed.  Proto said he was not going
to sell his Waste Management shares.

·                     
In
a telephone conversation with DeFrates, also in May, DeFrates told Shirvanian
that Waste Management “will have a billion in cash flow next year,” and Waste
Management would have enough money to “choke a horse.” 

·                     
Also
in May, at the airport in Dallas, Texas, during a conversation between
Shirvanian, Proto, and DeFrates, Proto said Waste Management was “doing great”;
[e]verything was “OK”; and “Waste Management is going to make its numbers,
($3.30) for first quarter 1999 and year end 1999.”

·                     
In
a telephone conversation with Proto around the first week of May or May 8 or 9,
1999, Tufenkian asked Proto how Waste Management was doing and if the company
was going to make enough money so that she could continue her charitable work,
and he said, “Yes.”








·                     
DeFrates
and Proto said in separate conversations to Shirvanian, “I’m not selling my
shares, and I don’t think you should sell yours . . . . [I]f I was you, I would
not sell my shares. . . .  I would not
get panicked. . . .  If you can . . .
keep your margins, I would try to do it; and I’m doing the same thing.  I’m trying to save whatever I have. . . .  [T]he company is going to do well.  Why do you want to sell your shares?”  Proto and DeFrates told Shirvanian not to
sell because it would “hurt the company” and “it won’t look good for the
company for Kosti to sell shares.”

·                     
DeFrates
and Proto told Shirvanian that “[e]verything we say is true facts and you can
depend on it; we are going to make our earnings; and we are going to make our
earnings next year; and if I was you, I would not sell my shares.”  

·                     
At
a February 14, 1999 wedding reception, in response to Shirvanian’s query as to
whether Waste Management would split its stock if it went up, Proto assured
Shirvanian, with Tufenkian present, that “[w]hen the stock goes to $60, we will
split the stock and Kosti is going to be a billionaire.  He’s going to make so much money, he wouldn’t
know what to do with it.”  Tufenkian’s
account of her conversation with Proto at the reception differs.  She testified that Proto told her that Waste
Management would “consider” splitting the stock if it went up.

·                     
Proto told Shirvanian the “company was doing great.”  Proto made a “personal commitment” to
Shirvanian:  “The company was doing
great; they are going to make their earnings.” 
DeFrates and Proto told Shirvanian “there was no reason to worry about
anything else.”  They told Shirvanian
“[w]e are going to make the 3.05.  No
problem.  We’re going to make a billion
dollars a year positive cash flow.”     

As a result of these many
misrepresentations, the Shirvanians cancelled their plans to sell more Waste
Management shares.  In June of 1999, the
Shirvanians possessed option rights to purchase up to 4 million additional
shares of Waste Management stock; if not exercised by June 30, 1999, certain of
the options would expire.  Shirvanian
exercised his options, purchasing 885,366 more shares of Waste Management
stock.  But, while the Shirvanians
cancelled their plans to sell shares and even purchased more shares through
options—all at the urging of DeFrates and Proto—DeFrates and Proto sold shares
of Waste Management stock.








In July, Waste Management issued several
press releases, including releases distributed on July 6, 1999, and July 29,
1999, in which the company announced that it would not meet its earnings
projections and that previously announced earning expectations were wrong.  On July 7, Waste Management’s stock fell from
$53.56 to below $33.94 per share, the largest one-day drop in share price in
Waste Management’s company history. 
During a telephone conversation on July 8, Proto told Shirvanian: “We
missed our projections,” and the market “over reacted”; we don’t know why the
market “reacted so badly”; the “market was unfair”; the market is “punishing us
for bad information.”  According to
Shirvanian, Proto also made the following comments:  (1) Waste Management’s stock “should not have
fallen below $45 per share” and that “everything is OK”; “all will be OK”; and
Waste Management’s stock value “will come back.”  (2) Waste Management will “absolutely make
its numbers”; “we are sure.”  (3) There
is “no more bad news”; everything is “behind us”; there will not be a “second
shoe to fall.”  (4) Kosti should “not get
panicky”; and “don’t sell.” 

Sometime between July 9 and July 13, 1999,
Shirvanian had another telephone conversation with Proto in which Proto said
Waste Management had a “$45 value if liquidated today”; Waste Management stock
“should go up to $50 per share”; things were “great”; and “I don’t know of any
more bad news.”  After the July 29 press
release in which Waste Management further revised its earning projections
downward, however, Waste Management’s stock fell from $33 per share to $26 per
share.  All total, Waste Management’s
stock dropped from $59 per share to $24 per share during the summer of
1999.  

In reliance on the above
misrepresentations made by Proto and DeFrates, the Shirvanians lost the
opportunity to sell their shares at a more favorable price and lost over $50
million.  Shirvanian sold more than 3.5
million shares of Waste Management stock between July 9, 1999, and August 13,
1999, at an average price of $22 per share. 
Furthermore, the Shirvanians allege they lost over $32 million relating
to the stock options they exercised, due in part to tax liability on
Shirvanian’s exercise of the options.








Because of the drop in Waste Management’s
stock value, derivative and shareholder class action lawsuits were commenced
against Waste Management and some of its former executives, including DeFrates
and Proto.  Two derivative lawsuits
brought in Delaware state court were consolidated in the case styled In re
Waste Management, Inc. Shareholders Derivative Litigation, C.A. No.
17313NC.  That litigation was settled and
the settlement approved by the Delaware Court of Chancery on September 30,
2001. 

The Shirvanians filed this lawsuit on
January 4, 2000, asserting causes of action for fraud and intentional
misrepresentation, negligent and grossly-negligent misrepresentation,
conspiracy,[2]
and damages.  They seek to recover as
damages the difference in the value of over 5 million shares of Waste
Management stock before and after the July, 1999 decline in Waste Management’s
stock value.  

Appellees filed special exceptions and a
motion for summary judgment.  The basis
for appellees’ special exceptions is that the Shirvanians failed to state a
cause of action because Texas does not recognize a common-law cause of action
for fraud for a “holder claim”—a claim that Proto and DeFrates induced the
Shirvanians to “hold” their stock rather than sell it—and this court should
adopt federal securities law to bar such a claim.[3]  In their motion for summary judgment,
appellees sought to prevail on any one of the following affirmative
defenses:  

(1) The Shirvanians lack capacity
to sue because all of their claims can be brought only in the name of the
corporation as a derivative action and none of the claims are personal to the
Shirvanians.








(2) 
Because the Shirvanians seek to recover for an injury common to all
Waste Management shareholders, the Shirvanians are improperly attempting to
assert derivative claims barred under res judicata principles by the prior
judgment entered by the Delaware court in the consolidated shareholder
derivative lawsuit brought against Waste Management based on the decline of
Waste Management’s stock in July of 1999. 


(3) The Shirvanians’ claims are
barred by the doctrines of unclean hands and unlawful acts because they (a)
sought and attempted to trade on insider information from Proto and DeFrates
and (b) allege they received fraudulent insider information.  

(4) Even if their
claims are direct claims, the Shirvanians’ claims are barred under the doctrine
of implied “conflict” preemption principles by federal securities laws that
prohibit insider trading.

Appellees also argue on appeal that the
trial court did not abuse its discretion in denying the Shirvanians’
postjudgment motion for leave to amend to add a claim for overpayment of taxes
predicated on Shirvanian’s exercise of his options to purchase Waste Management
stock at below-market prices because the Shirvanians’ original complaint did
not plead such a claim, and it also is a “holder” claim that fails as a matter
of law. 

                                                        Analysis








Though the parties cite extensive caselaw,
they concede that the Texas Supreme Court has not addressed the seminal
questions presented by this appeal.  This
appeal presents us with an unusual procedural framework because the trial court
sustained special exceptions and at the same time granted a motion for summary
judgment.  We first address the propriety
of summary judgment.  Before doing so, we
again note that appellees did not move for summary judgment on the basis that
the Shirvanians cannot prove the elements of their claims for fraud, negligent
misrepresentation, or conspiracy. 
Appellees moved for summary judgment on their defenses.  We resolve every reasonable inference in
favor of the Shirvanians and take all evidence favorable to them as true.  See Science Spectrum, 941
S.W.2d at 911.

A.      Summary
Judgment Was Proper.

1.       The
Shirvanians’ claims are derivative under Delaware law.

In their second issue presented, the
Shirvanians assert the trial court erred in granting summary judgment on the
ground that their claims are derivative, and thus are barred by the final
judgment entered in the Delaware shareholder derivative lawsuit from which the
Shirvanians did not opt out.  Appellees
argue the Shirvanians lack capacity to sue individually because, under Delaware
law—which all parties agree controls the issue—the Shirvanians’ claims are
derivative, as they are predicated on the decline in the value of their Waste
Management stock.  

As mentioned at the beginning of the
opinion, since this case was originally submitted, the Delaware Supreme Court
issued an opinion in which it clarified the issues to be determined in
analyzing whether a stockholders’ suit is direct or derivative.  Tooley v. Donaldson, Lufkin &
Jenrette, Inc., 845 A.2d 1031 (Del. 2004). 
The Delaware court articulated the standard as follows: “The analysis must be based solely on
the following questions: Who suffered the alleged harm—the corporation or the
suing stockholders, individually—and who would receive the benefit of any
recovery or other remedy?” 
Id. at 1035.  To decide if
the harm was to the corporation or to the stockholder individually, the court
suggested the most relevant question is whether the stockholder can prevail
without showing an injury to the corporation. 
Id. at 1036.  A court
should look to the nature of the wrong and to whom the relief should go.  Id. at 1039.  The stockholder’s claimed direct injury must
be independent of any alleged injury to the corporation.  Id. 
The stockholder must demonstrate that the duty breached was owed to the
stockholder and that he or she can prevail without showing a corresponding
injury to the corporation.  Id.  








Applying those principles here leads to
the conclusion that the Shirvanians’ complaints are derivative, not direct, and
could be asserted only on behalf of the corporation.  The misrepresentations the Shirvanians allege
caused their injury were based on mismanagement of the corporation’s
assets.  The Shirvanians cannot prove
their injury without proving an injury to the corporation.  We hold, therefore, that the Shirvanians’
suit is derivative under Delaware law.

2.       The
Shirvanians’ claims are barred by res judicata.

Two derivative lawsuits brought in
Delaware state court on behalf of all Waste Management stockholders were
consolidated in the case styled, In re Waste Management, Inc. Shareholders
Derivative Litigation.  The
shareholder derivative litigation settled and final judgment was entered on
September 20, 2001.  The judgment states
that all shareholders were given notice of the settlement and an opportunity to
object.  The judgment further provides
that it has res judicata effect as to “all claims and issues that have or could
have been raised.”  The judgment provides
it has a preclusive effect in all pending and future lawsuits encompassed by
the release.  The release encompasses all
causes of action that have been or could have been alleged or asserted by
shareholders or the company for damages or equitable relief.








Res judicata precludes relitigation of claims that have been
finally adjudicated, or that arise out of the same subject matter and could
have been litigated in a prior action.  Amstadt
v. U.S. Brass Corp., 919 S.W.2d 644, 654 (Tex. 1996).  Res judicata requires proof of the following
elements: (1) a prior final judgment on the merits by a court of competent
jurisdiction; (2) identity of parties or those in privity with them; and (3) a
second action based on the same claims as were raised or could have been raised
in the first action.  Espeche v.
Ritzell, 123 S.W.3d 657, 665 (Tex. App.—Houston [14th Dist.] 2003, pet.
denied).  Because we have determined  the Shirvanians’ claim is derivative, not
direct, the Shirvanians’ suit is barred by res judicata and should have been
brought in the consolidated shareholders’ derivative action.  Accordingly, summary judgment was proper.  The Shirvanians’ second issue is overruled.

B.      Special
Exceptions Were Properly Sustained.

In their first issue, the Shirvanians
contend the trial court erred in granting appellees’ special exceptions.  When reviewing a trial court’s dismissal of a
cause of action on special exceptions, we must accept as true all of the
factual allegations set out in the challenged pleading.  Aranda v. Insurance Co. of N. Am., 748
S.W.2d 210, 213 (Tex. 1988).  The legal
conclusions of the trial court as to whether the plaintiff’s petition
adequately established a cause of action are subject to de novo review in this
court.  Boales, 29 S.W.3d at
163.  Appellees filed special exceptions
in which they contended the Shirvanians failed to state a viable individual
cause of action.  Because the
Shirvanians’ claims were of a derivative nature and not individual claims, even
accepting the Shirvanians’ allegations as true, they failed to state a viable
individual cause of action.  Accordingly,
the trial court properly sustained the special exceptions.  The Shirvanians’ first issue is overruled.

C.      The
Trial Court’s Judgment Was Not Overbroad.

In their third issue, the Shirvanians
contend the trial court’s judgment is overbroad in that it grants relief not
addressed in the special exceptions or summary judgment motion.  The Shirvanians contend that appellees failed
to address, in their special exceptions or their motion for summary judgment,
the Shirvanians’ claims regarding the tax liability of exercising the options.  The Shirvanians exercised options to purchase
885,366 shares of Waste Management stock at $6.8333 per share when the market
value of the stock was $53.75 per share. 
The Shirvanians contend they had to pay taxes on the value of the shares
on July 30, 1999, before the price of the stock dropped.  








The Shirvanians’ original petition,
however, did not raise a cause of action for overpayment of taxes.  While the Shirvanians recited, in the factual
background of their petition, their exercise of the stock options, the only
fraud claims asserted against appellees were based on alleged
misrepresentations that caused the Shirvanians not to sell their stock. After
the trial court ruled on appellees’ special exceptions and motion for summary
judgment, the Shirvanians filed a document titled “Plaintiff’s Motion for New
Trial, Motion for Reconsideration and Request for Leave to Amend.”  Attached to that motion was Plaintiff’s First
Amended Petition.  In the amended petition,
the Shirvanians included an allegation that, in relying on appellees’ misrepresentations,
they exercised options to purchase 800,000 shares of Waste Management
stock.  Although the value of the Waste
Management stock declined significantly, it did not decline below the $6.8333
paid by the Shirvanians when they exercised their options.  Therefore, the Shirvanians’ injury from the
exercise of the options was the payment of taxes on the value of the shares on
July 30, 1999.

Texas follows a “fair notice” standard for
pleading, which looks to whether the opposing party can ascertain from the
pleading the nature and basic issues of the controversy and what testimony will
be relevant.  See Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 896–97 (Tex. 2000).  Here, because no cause of action was pleaded
prior to the trial court’s ruling, appellees could not be expected to address a
cause of action that had not yet been pleaded. 
The trial court did not err because the cause of action was not before
the court at the time of its ruling.  The
Shirvanians’ third issue is overruled.








In their fourth issue, the Shirvanians
contend the trial court erred in refusing to permit them to amend their
petition after sustaining appellees’ special exceptions.  After the trial court sustains special
exceptions, it may not dismiss a suit until the party has been given an option
to amend, unless the trial court can determine that an amendment will not cure
the defect. Geochem Labs. v. Brown & Ruth Labs. Inc., 689 S.W.2d
288, 290 (Tex. App.—Houston [1st Dist.] 1985, writ ref’d n.r.e.).  Summary judgment may also be proper if a
pleading deficiency is of the type that could not be cured by an amendment. Ryan
v. Friesenhahn, 911 S.W.2d 113, 115 (Tex. 1998).  Here, the Shirvanians could not have cured
the defect in their pleadings by an amendment. 
Their claim for overpayment of taxes is a derivative shareholders’ claim
because their injury derives from the drop in the stock’s value and cannot be
separated from that of the corporation.  See
Tooley, 845 A.2d at 1039.  Because
the proposed amended pleadings could not cure the defect, the trial court did
not err in denying the Shirvanians’ request for leave to amend.  The Shirvanians’ fourth issue is overruled.

                                                      Conclusion

Because we
conclude the Shirvanians’ claims are derivative under Delaware law, the claims
are barred by the release executed in the derivative lawsuit brought in
Delaware state court by Waste Management shareholders.  We affirm the trial court’s order sustaining
appellees’ special exceptions and granting summary judgment in their
favor.  

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment
rendered and Substitute Opinion filed November 18, 2004.

Panel
consists of Justice Fowler and Justice Hudson. 
Former Chief Justice Scott Brister not participating.











[1]  One defendant,
Gregory T. Sangalis, former general counsel of Waste Management, was nonsuited.





[2]  There is one
alleged factual basis for the conspiracy claim, according to Shirvanian’s
testimony.  He alleges that when Proto,
DeFrates, and Sangalis were at a meeting in Mexico during the operative time
frame, “they were conspiring and doing things that was not the best of the
corporate – or my benefit or any shareholder’s benefit.”





[3]  This argument
was the focus of appellees’ combined special exceptions and motion for summary
judgment.  On appeal, appellees no longer
make this argument their focal point, and instead argue that this court should
only reach this argument if we conclude summary judgment was not proper.  We make this note because appellees chastise
the Shirvanians for focusing on the special exceptions argument.  Such a contention is without merit when it is
appellees who have shifted their argument on appeal.