

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00007-CV

| | | |
|---|---|---|
| Glenn A. Wade and Karen Wade | § | From County Court at Law No. 3 |
| | § | of Tarrant County (2009-071744-3) |
| v. | § | January 24, 2013 |
| XTO Energy Inc. | § | Opinion by Justice Walker |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

It is further ordered that appellants Glenn A. Wade and Karen Wade shall pay all costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS


By_____
Justice Sue Walker



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00007-CV

GLENN A. WADE AND KAREN
WADE

APPELLANTS

V.

XTO ENERGY INC.

APPELLEE

----------

## FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In this breach of contract case, appellants Glenn A. Wade and Karen Wade argue that the trial court erred by granting judgment notwithstanding the verdict (JNOV) after the jury returned a verdict for the Wades, finding that they

---

[1]*See* Tex. R. App. P. 47.4.

had entered into a mineral lease with appellee XTO Energy Inc. and that XTO had breached the lease. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

XTO retained Holland Acquisitions to assist XTO in leasing the mineral interests from homeowners in the Overton Woods neighborhood of Fort Worth. Holland was responsible for conducting title searches, hosting lease-signing parties, and preparing the lease paperwork.

The Wades own Block 1, Lot 16 in the Overton Woods subdivision, including the mineral interests in the property. Holland, as XTO's agent, sent the Wades a letter in November 2007, proposing to lease the Wades' mineral interests for a $10,000 per net acre bonus payment and a 25% royalty. The Wades thought the offer was too low and did nothing to accept it.

In July 2008, Holland sent the Wades another offer letter, proposing a $21,000 per net acre bonus and a 26% royalty. The letter also included a lease form, which had a signature block for the Wades to sign as lessors and a notary block on the last page of the lease. The lease form also included as a separate page an Exhibit "A" describing the leased premises as Block 1, Lot 16 of the Overton Woods Addition to Fort Worth. The Wades took the lease form to a bank and signed it in front of a notary, who filled out the notary block. However,

Glenn decided to "sit on it for a while," thinking XTO might make a better offer, and he put the signed lease on his desk.[2]

On September 4, 2008, Holland sent the Wades a new offer letter, proposing a $25,000 per net acre bonus and a 25% royalty. The letter included a lease form, which, like the previous lease, included signature and notary blocks on the last page of the lease and an Exhibit "A" describing the leased premises as the Wades' property. The letter instructed the Wades to mail the executed lease to Holland, at which time XTO would mail them a bonus check. Glenn did not trust that he would receive a check, so he contacted Pam Dietrich with Holland and informed her that he and his wife wanted to accept that offer. Glenn told Dietrich that he did not want to mail the signed lease back to Holland but wanted instead to exchange it for a bonus check. Dietrich informed Glenn of an upcoming signing party where he could exchange the executed lease for a bonus check.

The Wades never executed the September 4, 2008 lease. Glenn went to the signing party on September 18, 2008, and took with him all of the documents that he had received from Holland and XTO, including the executed July 2008 lease and the unexecuted September 4, 2008 lease. Karen did not go with him. A Holland employee at the registration table looked at the documents and told Glenn that they were out of date and that he needed to sign a new lease. The

---

[2]He also made a copy of the last page of the lease for his records.

Holland employee took a new lease form off a stack of leases on the table and handed it to Glenn; Glenn confirmed that it contained the same bonus and royalty terms as the lease he received in the mail earlier that month. Glenn asked if his wife needed to come to the signing party to sign the new lease, and the Holland employee told him that they could use the signature page from the July 2008 lease that had already been signed by the Wades and notarized. The Holland employee wrote Glenn's and Karen's names and address in the blanks for the lessors' on the first page of the lease form and attached the last page of the July 2008 lease (executed by the Wades and the notary) to the new lease. The Holland employee kept the lease and told Glenn to go to the back table to get a bonus check. At the check table, Glenn filled out a check receipt form and received a bonus check in the amount of $12,430.[3] The check stub attached to the check included a description of the Wades' property, including the lot and block numbers and acreage.

As Glenn left the signing party, two Holland representatives stopped him and told him that they could not find his signed lease in their paperwork; they asked to look through his documents to see if it was mistakenly included in them. When they did not find it in Glenn's papers, he offered to sign another lease and have Karen come to the party and sign as well. The Holland employees told him not to "worry about it," and Glenn left. The Holland employees returned to the

_____

[3]The check was pre-printed and dated September 16, 2008, two days prior to the signing party.

4

signing party and resumed looking for the signed lease or anything with the Wades' signatures on it. They only found the check receipt form in their paperwork, so a Holland leasing agent drove to the Wades' residence to have them sign a new lease. No one answered the door.

The following day, the Wades used the bonus check to purchase a certificate of deposit in the same amount as the bonus payment. However, on that same day, XTO stopped payment on the bonus check because it did not have a signed lease from the Wades; XTO did not notify the Wades that it stopped payment on the check. The Wades' bank sent them a letter the following week notifying them of the stopped payment. Glenn did not read the letter until several weeks later, and upon reading it, he contacted Dietrich to inquire about getting a new bonus check. She told Glenn that XTO was no longer leasing. Glenn also spoke with XTO's general counsel, who said that XTO had stopped payment on the check because it did not have a signed lease and that it was making no further leasing offers. Shortly thereafter, XTO sent the Wades a letter stating that it was rescinding all offers to lease their mineral interests.

The Wades brought this suit against XTO for breach of contract, promissory estoppel, declaratory judgment, and specific performance. The case proceeded to a jury trial. After the Wades rested, the trial court granted XTO's motion for directed verdict on the issue of actual authority and on the Wades' promissory estoppel claim. The jury returned a verdict in favor of the Wades,

5

finding that the Wades "agree[d] to lease their minerals to XTO," and awarding the Wades damages of $12,430.00 and attorney's fees.[4]

The Wades filed a motion to enter judgment, and XTO filed a motion for JNOV. The trial court denied the Wades' motion, granted XTO's motion for JNOV, and entered judgment that the Wades take nothing on their claims.

### III. STANDARDS OF REVIEW

A trial court may disregard a jury verdict and render JNOV if no evidence supports the jury findings on issues necessary to liability or if a directed verdict would have been proper. *See* Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent; or (2) when the evidence is insufficient to raise a material fact issue. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 454 (Tex. App.—Fort Worth 2009, pet. denied) (op. on reh'g).

To determine whether the trial court erred by rendering a directed verdict or JNOV, we view the evidence in the light most favorable to the verdict under

---

[4]Specifically, the jury awarded attorney's fees of $50,000.00 for preparation and trial, $15,000.00 for an appeal to the court of appeals, and $15,000.00 for an appeal to the Texas supreme court.

6

the well-settled standards that govern legal sufficiency review. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). We must credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011); *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007).

## IV. BREACH OF CONTRACT

In their first issue, the Wades argue, in four subparts, that the trial court erred by granting JNOV for XTO because sufficient evidence exists in the record to support the jury's findings that the parties entered into an oil and gas lease for XTO to lease the Wades' mineral interests, because the statute of frauds does not preclude enforcement of the lease, and because evidence supported the jury's award of attorney's fees to the Wades.

Jury Question No. 1 asked, "Did the Wades agree to lease their minerals to XTO?" Question No. 2 asked, "Did the Wades and XTO agree to an oil and gas lease made up of pages 1 through 5 of the September 4, 2008 lease form followed by the original, fully executed, notarized signature page from the July 11, 2008 lease form?" Question No. 5 asked, "Did the Wades and XTO agree to an oil and gas lease in which the Lessors are defined as 'Glenn Alan and Karen Carter Wade, whose address is 4850 Moss Hollow Ct., Fort Worth, Texas

7

76109'?" Question No. 6 asked, "Did the Wades and XTO agree to an oil and gas lease in which the Leased Premises is described, in part, by an attached Exhibit 'A' that reads 'Block 1, Lot 16, Overton Woods Addition, City of Fort Worth, Tarrant County, Texas, 0.4972 acres, more or less'?" The jury answered, "Yes" to these questions. The jury also found that XTO's failure to comply with the agreement resulted in damages of $12,430 to the Wades.

XTO moved for JNOV arguing in part that no evidence existed that the Wades' names and addresses were correctly filled in on the lease form (Jury Question No. 5) or that an Exhibit "A" defining the leased property as the Wades' property was ever filled in and attached to the lease (Jury Question No. 6). In a letter to the parties' attorneys, the trial court wrote that it did not find any evidence to support the jury's answer to Jury Question No. 6. The trial court subsequently entered a written judgment granting XTO's motion for JNOV and ordering that the Wades take nothing.

## A. Statute of Frauds

Oil and gas leases are conveyances of interests in real property and, as such, must comply with the statute of frauds to be valid. *See* Tex. Bus. & Com. Code Ann. § 26.01(b)(4) (West 2009); *Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006). The statute of frauds requires that all contracts for the sale of real estate be in writing and signed by the person to be charged. Tex. Bus. & Com. Code Ann. § 26.01(a); *see also* Tex. Prop. Code Ann. § 5.021 (West 2004) (requiring that conveyance of land be in writing and "subscribed and delivered by

8

the conveyor"). To satisfy the statute of frauds, a writing conveying an interest in property must furnish, either within itself or by reference to some other existing document, the means or data by which the real estate at issue may be identified. *Texas Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996). Parol evidence may be used to explain or clarify the written agreement, but not to supply the essential terms. *Id.*; *see Long Trusts*, 222 S.W.3d at 416. The validity of the legal description of the property that is subject to the conveyance is not, under the statute of frauds, affected by the knowledge or intent of the parties. *Morrow v. Shotwell*, 477 S.W.2d 538, 540–41 (Tex. 1972); *May v. Buck*, 375 S.W.3d 568, 574 (Tex. App.—Dallas 2012, no pet.).

## B. Insufficient Evidence to Support Jury's Finding of a Valid Lease

Here, there is legally insufficient evidence of a fully executed lease that complies with the statute of frauds to support the jury's verdict. The Wades did not accept any of the lease offers from XTO that they received in the mail prior to September 2008, including the July 2008 lease that they signed and had notarized, nor do they base their claims on any of those leases. Instead, the Wades are attempting to enforce the September 2008 lease that they never signed. As XTO stated in its brief to this court, "This case can be summed up as follows: the Wades signed a lease that they did not accept and allegedly accepted a lease, without a property description, that they did not sign."

The July 2008 lease that the Wades executed contains different material terms than the September 2008 lease that they are attempting to enforce, and

9

even the July 2008 lease's signature page—where the Wades and the notary signed—contains provisions that conflict with those of the September 2008 lease.[5]  But even assuming that attaching the signature page from a prior lease, which contains different terms than the September 2008 lease, to the September 2008 lease sufficed to satisfy the requirement that the lease be signed by the lessor, *see* Tex. Bus. & Com. Code Ann. § 26.01(a); Tex. Prop. Code Ann. § 5.021, there is legally insufficient evidence in the record that Exhibit "A" was filled out with a description of the leased premises and attached to the lease that the Wades are attempting to enforce.  The form lease that the Holland employees used at the September signing party includes blanks for the lessors' names and address and states that the lessors leases "the land described on Exhibit 'A' attached hereto (the 'leased premises')."  The Exhibit "A" attached to the form lease also includes blanks for the block and lot, and acreage of the leased premises:

---

[5]The last page of the July 2008 lease contains, in addition to the Wades' and the notary's signatures, paragraphs 14 through 20 of the lease; paragraph 19 is titled "Option to Extend" and provides for additional consideration of $15,000 per net mineral acre if XTO exercised its option to extend the lease under that paragraph.  The last page of the September 2008 lease contains, in addition to blanks for the lessors' and notary's signatures, part of paragraph 21 and all of paragraph 22 of the lease.  Unlike the July 2008 lease, the "Option to Extend" paragraph is on the previous page and provides for additional consideration of $20,000 per net mineral acre if XTO exercised its option to extend the lease under that paragraph.  Thus, by attaching the last page of the July 2008 lease to the end of the September 2008 lease, there were two provisions governing the option to extend, each containing different terms.

10

**Exhibit "A"**
Block \_\_\_, Lot \_\_\_
Overton Woods Addition
City of Fort Worth, Tarrant County, Texas
_____ acres, more or less

Although Glenn testified that a Holland employee at the registration table filled in the Wades' names and address on the first page of the lease and attached the signature page of the July 2008 lease to it, Glenn never testified that the leasing agent or anyone else ever filled out Exhibit "A" to describe the leased premises, and the record is devoid of any evidence raising a material fact issue that the lease that the Wades are attempting to enforce—the September 2008 lease—provided a property description for the leased premises. *See Prudential Ins. Co. of Am.*, 29 S.W.3d at 77; *Playoff Corp.*, 300 S.W.3d at 454. While "[t]he record leaves little doubt that the parties knew and understood what property was intended to be conveyed," the lease had to furnish within itself or by reference to another writing the means to identify the leased premises with reasonable certainty. *See Morrow*, 477 S.W.2d at 540–41. Thus, contrary to the Wades' arguments on appeal, we cannot look to the bonus check stub, offer letters, or other extrinsic documents not referenced in the lease to supply the necessary legal description.[6]

---

[6]And although the form lease included the Wades' street address in the blank for the lessors' address, and this is the street address of the leased premises, nothing in the lease defines the leased premises as the lessor's mailing address or otherwise connects the defined term "leased premises" with the lessor's mailing address. Instead, it refers to an attached exhibit to supply the description of the leased premises.

11

The Wades further contend that the jury could have inferred that the leasing agent completed Exhibit "A" based on circumstantial evidence: Glenn testified that the leasing agent filled in his and his wife's names and address on the first page of the form lease; Glenn gave the leasing agent all the documents XTO and Holland had sent the Wades, which stated the legal description of the Wades' property, and therefore the leasing agent had the information necessary to fill out Exhibit "A"; and Glenn's neighbor testified that he also executed a lease at the signing party and that a leasing agent filled in the blanks on his lease form. But this evidence does no more than create a mere surmise or suspicion that the leasing agent filled out the Exhibit "A" to the lease that the Wades are attempting to enforce and does not amount to more than a scintilla of evidence to support the jury's finding. *See Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex. 1995); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

Viewing the evidence in the light most favorable to the jury's verdict under the well-settled standards that govern legal sufficiency review, crediting evidence favoring the jury verdict if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not, we find insufficient evidence to support the jury's finding that the Wades entered into a September 2008 lease that described the leased premises.

### C. Counter-Defenses to Statute of Frauds Inapplicable

The Wades also argue that the doctrines of partial performance and promissory estoppel apply here as counter-defenses to the statute of frauds.

12

XTO responds that the Wades waived these counter-defenses by not pleading them or requesting jury findings on them.[7]

Promissory estoppel and partial performance have been recognized as equity-based exceptions to the traditional statute of frauds. *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 553 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.); *see also Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982) (explaining promissory estoppel exception to statute of frauds); *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied) (explaining partial performance exception to statute of frauds). Generally, the party claiming an exception to the statute of frauds must secure a finding to that effect unless the exception is conclusively established by the evidence. *Mann v. NCNB Tex. Nat'l Bank*, 854 S.W.2d 664, 668 (Tex. App.—Dallas 1992, no writ); *see* Tex. R. Civ. P. 279; *Choi v. McKenzie*, 975 S.W.2d 740, 744 (Tex. App.—Corpus Christi 1998, pet. denied). Nevertheless, we need not decide whether these exceptions were properly pleaded or conclusively established because, as we explain in part V below in addressing the Wades' affirmative cause of action for promissory estoppel, they sought, and presented evidence, on only benefit-of-the-bargain damages. When promissory estoppel or partial performance applies to except

---

[7]The Wades sought affirmative relief under the equitable doctrine of promissory estoppel, but they did not plead promissory estoppel as an exception to the statute of frauds. *See Frost Crushed Stone Co., Inc. v. Odell Geer Const. Co., Inc.*, 110 S.W.3d 41, 46 & n.1 (Tex. App.—Waco 2002, no pet.) (explaining the difference between promissory estoppel as a counter-defense to statute of frauds and as a cause of action for affirmative relief).

13

an agreement from compliance with the statute of frauds, the party is entitled to only reliance damages, not benefit-of-the-bargain damages. *See Breezevale Ltd.*, 82 S.W.3d at 441; *see also Transcon. Realty Investors, Inc. v. John T. Lupton Trust*, 286 S.W.3d 635, 646 (Tex. App.—Dallas 2009, no pet.). Because the Wades have not pleaded or presented any evidence that they incurred any reliance damages, they are not entitled to recovery under these exceptions to the statute of frauds.

### D. JNOV was Proper

Having determined that insufficient evidence exists to support the jury's finding that the Wades entered into a September 2008 lease that described the leased premises and that no evidence exists that the Wades incurred any reliance damages as required to support recovery under an exception to the statute of frauds, we hold that the trial court correctly granted JNOV that the Wades take nothing on their breach of contract claim. Furthermore, because the trial court correctly granted JNOV on the Wades' breach of contract claim, they were not entitled to attorney's fees on this claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008) (providing for recovery of attorney's fees for claims for oral or written contracts); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (providing that attorney's fees are recoverable only if claimant prevails on cause of action and recovers damages). Having addressed all of the subparts of the Wades' first issue, we overrule it.

## V. PROMISSORY ESTOPPEL

In their second issue, the Wades argue that the trial court erred by entering a directed verdict on their promissory estoppel claim.

The requisites of promissory estoppel in Texas are: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisees to their detriment. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Frost Crushed Stone Co., Inc.*, 110 S.W.3d at 44. Damages recoverable in a case of promissory estoppel are not the profit that the promisees expected, but only the amount necessary to restore them to the position they would have been in had they not acted in reliance on the promise. *Fretz Constr. Co. v. S. Nat'l Bank of Houston*, 626 S.W.2d 478, 483 (Tex. 1981); *Frost Crushed Stone Co., Inc.*, 110 S.W.3d at 47; *see also Transcon. Realty Investors, Inc.*, 286 S.W.3d at 646 (explaining that when the statute of frauds bars enforcement of the representations, only out-of-pocket costs are recoverable).

Here, the Wades pleaded that they were "entitled to recover damages in the amount of the lease bonus and landowner's royalty," and they sought damages in the amount of $12,430—the amount of the bonus check that Wade received at the September signing party. The Wades sought what they would have gained had they entered into a valid lease with XTO. These are benefit-of-the-bargain damages—not reliance damages recoverable on a claim for promissory estoppel. Because the Wades presented no evidence of reliance damages, that is, any amounts necessary to place them in the position they

15

would have been in had they not relied on XTO's promise, their promissory estoppel claim fails. *See Fretz Constr. Co.*, 626 S.W.2d at 483. Consequently, we hold that the trial court correctly entered a directed verdict for XTO on this cause of action, and we overrule the Wades' second issue.

## VI. CONCLUSION

Having overruled the Wades' two issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: WALKER, MCCOY, and GABRIEL, JJ.

DELIVERED: January 24, 2013